## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.   **ELIZABETH STEWART,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIV-12-1297-C** |
| | ) | |
| 1.   **STATE OF OKLAHOMA EX REL.,** | ) | |
| **OKLAHOMA OFFICE OF** | ) | |
| **JUVENILE AFFAIRS, et al.,** | ) | |
| | ) | **ATTORNEY LIEN CLAIMED** |
| **Defendants.** | ) | **JURY TRIAL DEMANDED** |

### PLAINTIFF'S MOTION TO COMPEL WITH BRIEF IN SUPPORT

**COMES NOW** the Plaintiff Elizabeth Stewart ("Stewart"), and pursuant to Fed.R.Civ.P. 37, moves this Court for an Order compelling Defendant State of Oklahoma *Ex Rel.*, Oklahoma Office of Juvenile Affairs ("OJA") to provide full responses to Stewart's opening discovery requests. In support hereof, Stewart shows the Court as follows:

### I.  BACKGROUND OF CLAIMS ASSERTED

Stewart (who is African American) filed suit against Defendants OJA and Gene Christian (the former Executive Director who is Caucasian) based on race and gender discrimination, *inter alia,* following her seven (7) years of employment with OJA as the Division Director of Institutional Services. [Doc. No. 1]. Stewart brought a long history of experience in correctional work with her to OJA when she was hired on or about August 30, 2004 by then-Executive Director Richard DeLaughter. *Ex. 1, Stewart Tr., 5:23-9:17.* And, during her employment with OJA, she was not disciplined, and she received positive

1

performance reviews.  However, in or around October 2011, she was suspended by Christian and told that she could elect between resignation or termination.

In an effort to gather relevant information and prepare for trial, Stewart served OJA with discovery requests.  OJA's responses to these requests are the subject of this Motion.

## II.  CERTIFICATION OF LCvR 37.1 CONFERENCE

Stewart issued opening discovery to OJA on or about February 22, 2013.  OJA submitted its responses on or about March 25, 2013.  *Ex. 2, OJA Response to Plt's Opening Discovery*.  And, on or about May 8, 2013, OJA provided some supplemental information, particularly indicating in response to some of the discovery requests that no documents existed.  *Ex. 3, OJA Supp. Resp.*  Many of OJA's responses were deficient.  Therefore, an initial LCvR 37.1 discovery conference was held in person at Defendants' counsel's office on or about May 30, 2013.

Taking OJA at its word that many documents did not exist, Plaintiff moved forward with discovery.  To date, the depositions of Gene Christian, Janice Smith (OJA Board member), Gary Bolin (former OJA Chief of Staff), Deanna Hartley-Kelso (OJA Board member), Mike Heath (OJA Administrator with Office of Public Integrity), Carol Miller (one of Stewart's subordinates), Carey Rouse (OJA criminal investigator), Dusty Dowdle (OJA criminal investigator), and Laura Broyles (OJA Program Manager with federal grants) have been taken by Plaintiff's counsel.  However, during the course of these depositions, it has become clear that OJA has not been forthcoming with the information requested in this case.

2

Therefore, on October 15, 2013, Plaintiff asked for a second discovery conference:

> based on Mr. Heath's deposition testimony today (and others), it appears there is information and a number of documents that have not been produced to us in this case despite our request for the same. I am particularly concerned with Int. No. 16, 17, 18, RFP No. 8, 9, 11, 15, 19, 22, 23, 25, 26, 31, 32, 33, 42. Mr. Heath testified about complaints of discrimination and investigations regarding the same and investigations at COJC that are responsive to these requests. If you will not agree to supplement these responses with the information we have requested, please let me know by noon tomorrow when you are available for a LCvR 37.1 conference this week.

*Ex. 4, 10/15/13 Email from Leonard.* In response, OJA claimed it may supplement some information as Werner told her assistant (and then forwarded the same to Plaintiff's counsel):

> Also, Please get the supplementation on the discovery, to include: 1) investigation of the 2008 Manitou escape, 2)Laura Boyles sexual harassment complaint., 3) any other race, sex, or retaliation complaints by in Mike Heath's file from 2011 to 2007, and finally we have in the computer incidents at COJC that have already been redacted those should be included in this third supplement. If there were any other major incidents at COJC from 10/11 to 6/12 such as another riot or escape we need that too, there was testimony of something after Stewart left. This should be provided to Plaintiff by Friday on a disk.

*Ex. 5, 10/21/13 Werner Email.* Despite this, no supplementation has been received. As such, a second 37.1 conference was held in person on October 23, 2013. *Ex. 6, Leonard Email.*

On October 28, 2013, Plaintiff's counsel sent a follow-up email asking for OJA's position on the discovery at issue. Werner responded that her assistant is "working on it." *Ex. 7, 10/29/13 Email from Werner.* Plaintiff's counsel asked for clarification, but no further response has been received. *Ex. 8, 10/29/13 Email from Leonard.* With the discovery

deadline being Friday, November 1, 2013, Plaintiff asks the Court to compel OJA to respond

to the requests outlined herein.

## III.  ARGUMENTS AND AUTHORITIES

### A.    Discovery is broad in nature.

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim."

> Relevancy is broadly construed, and a request for discovery should be
> considered relevant if there is "any possibility" that the information sought
> may be relevant to the claim or defense of any party.  A request for discovery
> should be allowed "unless it is clear that the information sought can have no
> possible bearing" on the claim or defense of a party.  When the discovery
> sought appears relevant, the party resisting the discovery has the burden to
> establish the lack of relevance by demonstrating that the requested discovery
> (1) does not come within the scope of relevance as defined under Fed.R.Civ.P.
> 26(b)(1), or (2) is of such marginal relevance that the potential harm
> occasioned by discovery would outweigh the ordinary presumption in favor of
> broad disclosure.

*Owens v. Sprint/United Mgmt Co.*, 221 F.R.D. 649, 652 (D.Kan. 2004)(footnotes omitted).

In employment cases, the need for broad discovery is especially pronounced because

of the difficulty in proving pretext and intent:

> Even an employer who knowingly discriminates. . . may leave no written
> records revealing the forbidden motive and may communicate it orally to no
> one.  When evidence is in existence, it is likely to be under the control of the
> employer, and the plaintiff may not succeed in turning it up.

*MacDonald v. Eastern Wyoming Mental Health Center*, 941 F.2d 1115, 1118-19 (10th

Cir.1991) (quoting *LaMontagne v. American Convenience Prods., Inc.,* 750 F.2d 1405, 1410

(7th Cir.1984)).  For this reason, "discovery in discrimination cases should not be narrowly

circumscribed [and] an employer's general practices are relevant even when plaintiff is asserting an individual claim for disparate treatment." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir.1995). *See also EEOC v. Shell Oil Co.*, 466 U.S. 54, 68-69 (1984).

OJA's discovery responses at issue herein are contrary to the policy of the discovery rule and are obstructive to the progress of this case. Therefore, Stewart requests this Court compel the disclosure of the information and materials set out below.

**B.**   **Specific discovery requests at issue**

i.   Interrogatory Nos. 16-18 and Request for Production Nos. 8-9, 31-33, and 42

**Information Sought:** Plaintiff's claims in this case include allegations of gender and race discrimination. These discovery requests center on other reports of gender and race discrimination at OJA for the period from January 1, 2008 to the present. Particularly, Plaintiff requested the identification of individuals who made such complaints and the documents related thereto: (1) lawsuits (Int No. 16, RFP No. 33), (2) Charges of Discrimination (Int. No. 17, RFP Nos. 8, 33, 42), and (3) internal complaints (Int. No. 18, RFP Nos. 9, 31, 32, 33, 42). *Ex. 2, OJA Response to Plt's Opening Discovery*.

**OJA's Response:** OJA objected to all of these discovery requests as irrelevant, overly broad, and beyond the scope of discovery in relation to Plaintiff's individual claims.[1] *Ex. 2, OJA Response to Plt's Opening Discovery*.

---

[1]Although OJA claimed that it did not intend to sift through resident complaints of discrimination, those are not the subject of Plaintiff's requests or this Motion. Plaintiff is only interested in discovering information about complaints from employees.

**OJA's Supplemental Response:**  In Response to RFP Nos. 9, 32 and 33, OJA stated, "without waiver of this objection: none," signifying no documents relating to internal complaints, EEOC Charges or lawsuits based on allegations of gender or race discrimination exist for that time period. However, as shown below, Plaintiff learned on or about October 15, 2013 during the deposition of Mike Heath that this is not true.  And, OJA's supplemental response to RFP  No. 31 merely referred to policies produced - no complaints made under that policy.  *Ex. 3, OJA Supp. Response to Plt's Opening Discovery*.

**Arguments:**

**(1) Relevance:**  OJA's relevancy objections are without merit.  Here, Plaintiff is attempting to gather information about other complaints of gender or race discrimination that arose during the time in which Gene Christian - the claimed sole decision-maker - was Executive Director.  *Ex. 9, Christian Tr., 47:15-22*.  As Executive Director, Christian was the final decision-maker with regard to personnel actions.  *Ex. 10, Bolin Tr., 16:17-17:9*.

The existence of the information sought herein was only brought to light through depositions taken by Plaintiff's counsel.  Particularly, through the deposition of Mike Heath (the Administrator with the Office of Public Integrity with OJA since 2000), Plaintiff discovered that OJA has internally investigated roughly four to five discrimination complaints per year since September 2006 when Christian became the Executive Director.  *Ex. 11, Heath Tr., 5:8-6:5; 23:25-24:15; Ex. 9, Christian Tr., 75:1-2*.  Heath believed that some of those complaints were substantiated by his office.  *Ex. 11, Heath Tr., 24:24-25:12*.

And, Heath stated that such investigatory files have been retained and are accessible in a hard copy or in an electronic format.  *Ex. 11, Heath Tr., 15:10-24; 25:13-26:6.*

Significantly, Heath disclosed that a Programs Manager, Laura Broyles, complained twice about Christian engaging in gender discrimination.  Her first complaint was around 2009 or 2010, and Broyles complained internally (and filed a grievance) that she was not earning the same amount as her male comparators.  *Ex. 12, Broyles Tr., 15:12-16:8; Ex. 11, Heath Tr. 42:18-43:22.*  Heath investigated the complaint, finding no merit to her claim.  *Id.* Heath, however, claimed that Merit Protection disagreed, finding that she was being paid inequitably based on her gender.  *Id.*

Broyles' second complaint about Christian arose after she had filed her grievance regarding her pay and was based on an offensive comment he made to Broyles in the presence of several OJA employees.  *Ex. 12, Broyles Tr., 19:17-20; Ex. 11, Heath Tr., 44:2-8.*  Particularly, Broyles was attempting to make hotel arrangements for a legislator and discussing a travel claim with Christian.  Christian then stated to Broyles that "maybe if [Broyles] should just sleep with [the legislator] then it would fix the budget problems." *Ex. 12, Broyles Tr. 18:9-19:3; Ex. 11, Heath Tr., 34:6-35:8.*  Broyles was offended by the comment.  *Ex. 11, Heath Tr., 35:3-8.*  Broyles complained internally to Heath about this offensive comment and opted to speak directly to Christian about the matter to establish some "boundaries" with him.  *Ex. 12, Broyles Tr., 17:9-18:11, 19:21-24.*  She also testified that "you know in an environment - when you're a woman - you know when there is respect and

when there isn't. ... So, you knew....  *Ex. 12, Broyles Tr., 20:25-21:18.*  When asked to elaborate on that, she felt that with her settlement agreement, she could not at that time.[2]  *Ex. 12, Broyles Tr., 15:9-20, 16:12-17:20, 22:1-9.*

Hence, OJA's responses to the discovery at issue (claiming no such documents exist) were not only incomplete, but patently untrue.  And, based on Heath's testimony, it is highly likely that there are other gender/race discrimination complaints concerning Christian as well.  OJA's supplemental discovery response, stating that no such complaints exist, is false.  And, as such, OJA should be compelled to produce the information.

In *Snowden by and through Victor v. Connaught Lab*, 137 F.R.D. 325, 329 (D.Kan.1991), the Court held as follows:

> The test of relevancy is a liberal one.  "Discovery relevance is minimal relevance reasonably calculated to lead to the discovery of admissible evidence under FRCvP 26.  'Discovery is to be considered relevant where there is any possibility that the information sought may be relevant to the subject matter of the action.'"

---

[2]After Heath's disclosure of Broyles, Plaintiff's counsel requested her deposition.  Defendants made no mention of any settlement agreement that would prohibit Broyles from testifying.  However, Broyles was unrepresented at the deposition and did not feel that she could elaborate as to the details of her gender discrimination lawsuit against OJA.  Therefore, Plaintiff's counsel ended the deposition, but held it open until such time as a determination could be made.  After learning that she was represented by Kevin Donelson in that matter, Plaintiff's counsel spoke with Mr. Donelson who advised that, to be sure, if both parties consented to Broyles' testimony about the underlying facts (not the settlement amount), then she could provide her testimony.  Defendants' counsel has not yet stated whether she objects or consents.  *Ex. 13, 10/25/13 Email from Leonard.*

*See also Accord Pulsecard, Inc. v. Discover Card Services, Inc.*, 168 F.R.D. 295, 309 (D.Kan.1996) ("a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action.").

Clearly, discovery related to complaints about the same claims in this case (gender and race discrimination for a five (5) year period) is relevant to show Christian/OJA's propensity to engage in such acts. OJA's treatment of others can be evidence of its pattern of conduct toward a protected class which can, in turn, create an inference that an employer discriminated against individual members of the class. *See Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 746 (10th Cir. 1991).

In fact, in *Byers v. Illinois State Police*, 2002 WL 1264004, *9 (N.D.Ill. 2002) (Exhibit 16), the Court found that the plaintiffs were entitled to the production of documents and information related to other acts of discrimination by the defendant because such information was relevant to establish pretext. (Citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-05 (1973)); *Phillip v. ANR Freight Sys. Inc.*, 945 F.2d 1054, 1056 (8th Cir. 1991)(reversing district court's exclusion of other age discrimination complaints filed against defendant); *Gomez*, 50 F.3d at 1520 (noting that employer's general practices relevant even in disparate treatment case)). *See also Pleasants v. Allbaugh*, 208 F.R.D. 7, 15 (D.D.C.2002) (allowing discovery of other complaints of race discrimination for employing unit).

> Like any discovery request, the discovery of prior discrimination complaints against the defendant must be tailored to the legal issues involved in each particular case. *See Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 55 (D.N.J.1985). For example, courts have limited such requests in time, *Burks v. Oklahoma Publishing Co.*, 81 F.3d 975, 981 (10th Cir.1996)(affirmed district court's decision to deny request for all discrimination complaints over last ten

9

years), and to the relevant decision-maker, *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1085 (11th Cir.1990)(decision made locally so discovery limited locally); *cf. Flanagan v. Traveleres Ins. Co.*, 111 F.R.D. 42, 48 (W.D.N.Y.1986)(limited to northeast region of company).

*Byers*, 2002 WL 1264004, at *9.

Similarly, the Court in *Dixon v. Ashcroft*, 2001 WL 1910055, *2 (W.D.Tenn 2001) (Exhibit 17), allowed discovery into other complaints of discrimination and stated as follows:

> With regard to prior charges and complaints of discrimination based on race, sex, and retaliation, the information sought is relevant to the "claim or defense of any party", i.e., the plaintiff's claim of employment discrimination on the basis of race, sex, and retaliation. Fed.R.Civ.P. 26(b)(1). An employee may attempt to prove intentional discrimination by presenting credible, direct evidence of discriminatory intent. *Perkins v. Regents of University of Michigan*, 934 F.Supp. 857, 863 (E.D.Mich. 1996). One element of such a claim of intentional discrimination is that the person responsible for the termination decision was "(a) predisposed to discriminate against persons in the protected class and (b) actually acted on that predisposition in the ... decision." *Id.* A plaintiff's discovery of past charges of discrimination against the same protected class of which he or she is a member could lead to admissible evidence of a predisposition to discriminate against the protected class. In this case, the potential probative value of such evidence outweighs the possibility of a chilling effect on EEO or other discrimination complainants.

Moreover, "the burden of showing that the requested discovery is not relevant to the issues in the litigation is clearly on the party resisting discovery." *Spell v. McDaniel*, 591 F.Supp. 1090, 1114-15 (W.D.Ark.1984). OJA has not met this burden in that it has offered no basis for the objection. "More than a conclusory statement that the discovery is irrelevant must be offered, the opposing party must show specifically how the request is not reasonably calculated to lead to the discovery of admissible evidence." *Teichgraeber v. Memorial Union Corp. of Emporia State Univ.*, 932 F.Supp. 1263, 1265-66 (D.Kan.1996). And, "an alleged

[wrongdoer] cannot be allowed to pick and choose the evidence which may be necessary."
*Pennsylvania v. EEOC*, 493 U.S. 182, 193 (1990) (quoting *EEOC v. Frankley and Marshall College*, 775 F.2d 110, 116 (3d Cir.1985)); *Weahkee v. Norton*, 621 F.2d 1080, 1083 (10th Cir.1980) ("To accept the [Defendant's] evaluation that the 'pertinent documents' were available would. . . be to abdicate control of the discovery process to one of the adversaries involved in the dispute."). OJA has failed to meet this burden.

**(2) Over broad** - OJA has also failed to substantiate its objection based on overbreadth - a burden it bears. *See General Elec. Capital Corp. v. Lear Corp.,* 215 F.R.D. 347, 640 (D. Kan. 2003). OJA cannot simply rely on the invocation of the words "over broad" to establish the same, rather it bears the responsibility of coming forward with specific facts to support its objections. *See Oleson v. Kmart Corp.*, 175 F.R.D. 560, 565 (D.Kan. 1997). OJA has not stated how the requests at issue are overly broad - which they are not. The requests are specific to the claims in this case and cover a period of 5 years.

In *Owens, supra,*, the plaintiff sought information as to other complaints of age and sex discrimination from "January 2000 to the present." The plaintiff alleged that the discriminatory actions taken against her began in September 2002. The Court explained that

> discovery of information both before and after the liability period within a Title VII lawsuit may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period. Thus, the task of the trial court is to balance the clear relevance of the information against the burden on the defendant. (Citing *James [v. Newspaper Agency Corp.]*, 591 F.2d [579,] 582 [(10th Cir. 1979)] (four years prior to liability period reasonable); *Gen. Ins. Co. v. EEOC*, 491 F.2d 133 (9th Cir.1974)(eight years prior to liability period held excessive); *EEOC v. Kansas City S. Ry.*, 195 F.R.D. 678 (D.Kan.2000) (allowing discovery four years prior

and one year after alleged discriminatory conduct); *Raddatz v. Standard Register Co.*, 177 F.R.D. 446, 448 (D.Minn.1997) (allowing discovery into the period two years after termination); *Lyoch v. Anheuser-Busch Companies, Inc.*, 164 F.R.D. 62, 67 (E.D.Mo.1995)(four years prior to liability period reasonable); *Hicks v. Arthur*, 159 F.R.D. 468, 471 (E.D.Pa.1995) (allowing discovery to extend to the period two years after the tenure of the plaintiffs); *Stevenson v. Gen. Elec. Co.*, No. C-1-77-122, 1978 WL 150, at *1 (S.D.Ohio Oct. 4, 1978)(noting emergence of a "five-year rule").

*Owens*, 221 F.R.D. at 655.

Based on this authority, Plaintiff's request for gender and race discrimination complaints over a five (5) year period is not overly broad.  And, OJA has failed to show otherwise.  Therefore, Plaintiff respectfully requests the Court compel the production of the information sought herein.

ii.    Request for Production Nos. 15, 19, 22-23, 25-26

**Information Sought:** Christian testified that Plaintiff was relieved of her duties because of three (3) incidents that occurred at the COJC facility.  *Ex. 9, Christian Tr., 47:23-49:5.*  Plaintiff did not work at COJC, but at OJA State Office where she provided oversight functions to three (3) facilities (COJC, SWOJC, and Rader).  *Ex. 10, Bolin Tr., 18:14-15; Ex. 14, Miller Tr., 32:2-14.*

Therefore, Plaintiff sought information related to: (1) Plaintiff's work performance (RFP No. 15); (2) any documents related in any way to Plaintiff (RFP No. 19); (3) the performance of the facilities (RFP No. 22, 23); and (4) Plaintiff's forced resignation/ termination (RFP No. 25, 26).  *Ex. 2, OJA Response to Plt's Opening Discovery.*

**OJA's Response:** OJA objected to RFP Nos. 15, 19, and 22 (related to Plaintiff's performance and the performance of the facilities) as burdensome, harassing, overly broad,

outside the scope of discovery and irrelevant.[3]  *Ex. 2, OJA Response to Plt's Opening Discovery*.  OJA objected to RFP No. 23 on the basis of confidentiality.[4]  *Id.*  And, in response to RFP Nos. 25 and 26, OJA stated that it objected that Plaintiff's "resignation was forced" (although all testimony has shown that it was) and then pointed to essentially the same documents in RFP No. 22.  *Id.*  No supplemental information was provided by OJA relative to these requests.

**Arguments:**  As set forth above, the requested information is clearly relevant to the claims being asserted in this case.  Christian testified that Plaintiff was relieved of her duties because of three (3) incidents that occurred at the COJC facility.  *Ex. 9, Christian Tr., 47:23-49:5*.  However, Particularly, the juveniles housed in these facilities are convicted felons.  The very nature of these facilities and these residents means that issues are going to arise.  That has been consistent from the outset.

Particularly, Heath (whose office is charged with criminal investigations of juvenile on staff assaults, staff on juvenile assaults, and administrative/policy violations of staff) testified that the number of incidents at the facilities has *climbed* over the years (even after Stewart's dismissal in 2011).  When he first started around 2000, there were roughly 28-32 per year.  In 2009, OJA took on the additional responsibility of conducting the criminal

---

[3]OJA did produce a few documents in response to RFP No. 22 though such documents are essentially Plaintiff's performance reviews and merit increases in pay.  *Ex. 2, OJA Response to Plt's Opening Discovery*.

[4]OJA also produced a one page document identifying various events at the facilities.  *Ex. 2, OJA Response to Plt's Opening Discovery*.

investigations internally.  And, since 2009, the numbers have increased.   In fact, in 2013, there have been roughly 170.  *Ex. 11, Heath Tr., 5:18-23, 38:10-42:13.*  And, Dusty Dowdle, who hired on with OJA in 2010 as a criminal investigator under Heath, testified that the number of criminal investigations has gone up "drastically" from his hire date to present.  *Ex. 15, Dowdle Tr., 6:4-21.*   Therefore, documents related to Plaintiff's performance, the performance of those facilities (during her employment and after), and her termination are relevant to this case and the issue of pretext.

Moreover, as shown above, the information requested is not over broad and OJA has failed to offer any basis for such objection.  And, the requested information is not unduly burdensome.  To establish a claim of "undue burden," OJA cannot rely merely upon the invocation of those words, rather it bears the responsibility of coming forward with specific facts to demonstrate why the burden would be "undue."  *See Oleson*, 175 F.R.D. at 565:

> . . .The objecting party has the burden to substantiate its objections.  *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540 (10th Cir.1984), *cert. dismissed,* 469 U.S. 1199, 105 S.Ct. 983, 83 L.Ed.2d 984 (1985).  The litany of overly burdensome, oppressive, and irrelevant does not alone constitute a successful objection to a discovery request.  *Employers Commercial Union Insurance Company of America, et al.,* 1993 WE 210012 (D.Kan.1993); *Roesberg v. Johns-Manville Corp.,* 85 F.R.D. 292 (E.D.Pa.1980).   The objecting party must show specifically how each discovery request is burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.  *Employers Commercial Union Insurance Company of America*, 1993 WL 210012 at *2 [(D.Kan. 1993)].

The key word is "undue" burden.  Mere inconvenience, even though substantial, is not enough to prevent compliance with a request for relevant materials.  *See Biliske v. American Live Stock Ins. Co.*, 73 F.R.D. 124, 126 (D.C. Okla. 1977)(internal citations omitted):

. . .The Court recognizes that the production of these documents will undoubtedly be an inconvenience. . . But the mere fact that production would be onerous or inconvenient is not, *per se*, grounds for denial of a Rule 34 request.  Hardship upon the producing party does not necessarily justify denial of the request.

Here, Heath testified that he keeps all of these files and has access to them all.  *Ex. 11, Heath Tr., 15:10-24; 25:13-26:6*.  Therefore, OJA's objection is without merit.

Finally, OJA's argument that the information sought in RFP No. 23 is confidential is similarly without merit as the parties can easily enter into a Protective Order if this is truly a concern.  Therefore, Plaintiff requests that this Court compel OJA to produce the documents responsive to RFP Nos. 15, 19, 22, 23, 25, and 26.

## CONCLUSION

**WHEREFORE**, Plaintiff respectfully requests the Court grant her Motion to Compel.

Respectfully submitted,

s/Jana B. Leonard
LEONARD & ASSOCIATES, P.L.L.C.
JANA B. LEONARD, OBA # 17844
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800 Telephone
(405) 239-3801 Facsimile
 leonardjb@leonardlaw.net

15

## CERTIFICATE OF SERVICE

This is to certify that on this <u>29th</u> day of October, 2013, I electronically transmitted this document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Electronic Mail Notice List:        The following are those who are currently on the list to receive e-mail notices for this case.

Jana B. Leonard leonardjb@leonardlaw.net; dorfflert@leonardlaw.net

Susan K. Werner Susan.Werner@oag.ok.gov

Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

(No manual recipients)

s/Jana B. Leonard