CASE NO. CIV-12-1297-C

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

ELIZABETH STEWART,

Plaintiff,

v.

STATE OF OKLAHOMA, *ex rel.,* OKLAHOMA OFFICE OF JUVENILE
AFFAIRS, and GENE CHRISTIAN, Individually as former Executive Director of
the Oklahoma Office of Juvenile Affairs,

Defendants.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SUSAN WERNER, OBA#9482
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 522-2930   Facsimile: (405) 521-4518
susan.werner@oag.ok.gov
*Attorney for Defendants*

November 1, 2013

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................... i

TABLE OF AUTHORITIES .......................................................................... iv

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ....................... 1

STATEMENT OF THE CASE ......................................................................... 1

STATEMENT OF FACTS ............................................................................... 2

STANDARD OF REIVEW ............................................................................. 4

SUMMARY OF THE ARGUMENT ............................................................. 5

ARGUMENT AND AUTHORITIES ............................................................. 6

PROPOSITION I:

      STEWART HAS NOT ESTABLISHED A CLAIM OF DISCRIMINATION
      OR RETALIATION BY DISPARATE TREATMENT ...................................... 7

      A.     Stewart has Failed to Establish a *Prima Facie* Case of
            Discrimination or Retaliation ...................................................... 7

            1. *Stewart has not demonstrated a prima facie case of race or gender
               discrimination* ........................................................................... 7

            2. *Stewart has not demonstrated a prima facie case of retaliation* .......... 10

      B.     OJA's Legitimate Reasons for Terminating Stewart .................................. 12

      C.     Stewart Failed to Show Intentional Discrimination or Retaliation ............. 13

PROPOSITION II:

      STEWART HAS NOT ESTABLISHED A TITLE VII CLAIM OF A
      DISCRIMINATORY OR RETALIATORY HOSTILE ENVIRONMENT ... 14

**PROPOSITION III:**

> **STEWART WAS NOT DEPRIVED OF PROCEDUREAL OR
> SUBSTANTIVE DUE PROCESS OR EQUAL PROTECTION
> UNDER THE FOURTEENTH AMENDMENT** ............................... 16

> A.    Stewart does not Have a Property Interest in Continued
>       Employment at OJA ................................................................ 16

> B.    Stewart was not Deprived of Procedural Due Process ................. 17

> C.    Stewart was not Deprived of Substantive Due Process ............... 18

> D.    Stewart was not Deprived of a Liberty Interest .......................... 19

> E.    Stewart has Failed to Demonstrate an Equal Protection Claim ................. 21

**PROPOSITION IV:**

> **CHRISTIAN IS ENTITLED TO QUALIFIED IMMUNITY** ......................... 22

**PROPOSITION V:**

> **STEWART'S NEGLIGENT SUPERVISION CLAIM IS SUBJECT
> TO DISMISSAL AS A MATTER OF LAW** ...................................... 25

**PROPOSITION VI:**

> **STEWART'S DEFAMATION CLAIMS IS SUBJECT TO
> DISMISSAL** ............................................................................. 26

**PROPOSITION VII:**

> **STEWART'S BLACKLISTING CLAIMS IS SUBJECT TO
> DISMISSAL** ............................................................................. 27

**PROPOSITION VIII:**

> **STEWART HAS FAILED TO DEMONSTRATE AN INTENTIONAL
> INFLICTION OF EMOTIONAL DISTRESS** ................................. 28

PROPOSITION IX:

OJA AND CHRISTIAN ARE ENTITLED TO ELEVENTH
AMENDMENT/SOVEREIGN IMMUNITY............……………………………..29

CONCLUSION............................................................................................................ 30

CERTIFICATE OF SERVICE.................................................................................... 31

# TABLE OF AUTHORITIES

## CASES

*Alden v. Maine,*
119 S.Ct. 2240 (1999) ........................................................................................ 29

*Allen v. Justice Alma Wilson Seeworth Academy, Inc.,*
2012 WL 1298588 (W.D. Okla.) ....................................................................... 25

*Anderson v. Creighton,*
107 S.Ct. 3034 (1987) ............................................................................ 5, 22, 23

*Anderson v. Liberty Lobby, Inc.,*
106 S.Ct. 2505 (1986) .......................................................................................... 5

*Antonio v. Sygma Network, Inc.,*
458 F.3d 1177 (10th Cir. 2006) ................................................................... 10, 24

*Bishop v. Wood,*
96 S.Ct. 2074 (1976) ......................................................................................... 22

*Board of Regents of State Colleges v. Rother,*
92 S.Ct. 2701 (1972) ......................................................................................... 16

*Bowdish v. Federal Express Corp.,*
699 F.Supp.2d 1306 (W.D. Okla. 2010) ........................................................... 25

*Brock v. Thompson,*
948 P.2d 279 (1997) ........................................................................................... 28

*Burke v. K-Mart Corp.,*
770 P.2d 24 (1989) ............................................................................................. 17

*Burlington Northern and Santa Fe Ry. Co. v. White,*
126 S.Ct. 2405 (2006) .................................................................................. 11, 13

*Celotex Corp. v. Catrett,*
106 S.Ct. 2548 (1986) .......................................................................................... 5

*Christie v. U.S.,*
518 F.2d 584 (Ct. Cl. 1975) ................................................................. 8

*Clark County School Dist. v. Breeden,*
121 S.Ct. 1508 (2001) ...................................................................... 10

*Cleveland Bd. of Educ. v. Loudermill,*
105 S.Ct. 1487 (1985) ................................................................. 17, 18

*Coleman v. Houston Independent School Dist.,*
113 F.3d 528 (5th Cir. 1997) ............................................................. 22

*Cooper v. Sedgwick County, Kansas,*
206 F.Supp 2d 1126 (D. Kan., 2002) ................................................. 20

*County of Sacramento v. Lewis,*
118 S.Ct. 1708 (1998) ...................................................................... 19

*Curtis v. Oklahoma City Public Schools Bd. of Educ.,*
147 F.3d 1200 (10th Cir. 1998) ......................................................... 19

*Darr v. Town of Telluride, Colo.,*
495 F.3d 1243 (10th Cir. 2007) ............................................... 16, 17, 19

*Drake v. City of Fort Collins,*
927 F.2d 1156 (10th Cir. 1991) ........................................................... 7

*Durham v. McDonald's Restaurants of Oklahoma, Inc.,*
256 P.3d 64 (2011) .......................................................................... 28

*E.E.O.C. v. PVNF, L.L.C.,*
487 F.3d 790 (10th Cir. 2007) ........................................................... 10

*Ellis v. University of Kansas Medical Center,*
163 F.3d 1186 (10th Cir. 1998) ......................................................... 29

*Elwell v. Oklahoma ex rel., Bd. of Regents of University of Oklahoma,*
693 F.3d 1303 (10th Cir. 2012) ......................................................... 29

*Engquist v. Oregon Dept. of Agr.,*
128 S.Ct. 2146 (2008) ...................................................................... 21

*Etsitty v. Utah Transit Authority,*
502 F.3d 1215 (10th Cir. 2007) ........................................................................... 21

*Faragher v. City of Boca Raton,*
118 S.Ct. 2275 (1998) ........................................................................................ 15

*Filarsky v. Delia,*
132 S.Ct. 1657 (2012) ........................................................................................ 23

*Furr v. Seagate Technology, Inc.,*
82 F.3d 980 (10th Cir. 1996) ............................................................................. 30

*Gray v. Udevitz,*
656 F.2d 1101 (1978) ......................................................................................... 26

*Green v. New Mexico,*
420 F.3d 1189 (2005) ........................................................................................... 8

*Hargray v. City of Hallandale,*
57 F.3d 1560 (11th Cir. 1995) .......................................................................... 8, 9

*Harlow v. Fitzgerald,*
102 S.Ct. 2727 (1982) ........................................................................................ 23

*Harris v. Forklift Systems, Inc.,*
114 S.Ct. 367 91993) ......................................................................................... 14

*Herbert v. Oklahoma Christian Coalition,*
992 P.2d 322 (1999) ........................................................................................... 27

*Hinson v. Cameron,*
742 P.2d 549 (1987) ........................................................................................... 17

*Hunter v. Bryant,*
112 S.Ct. 534 (1991) .......................................................................................... 23

*Hyde Park Co. v. Santa Fe City Council,*
226 F.3d 1207 (10th Cir. 2000) ......................................................................... 16

*Johnston v. Corinthian Television Corp.,*
583 P.2d 1101 (1978) ................................................................................................ 26

*Jones v. U.P.S., Inc.,*
502 F.3d 1176 (10th Cir. 2007) ............................................................................... 11

*Jurkowski v. Crawley,*
637 P.2d 56 (1981) ............................................................................................. 26, 27

*Kirkland v. St. Vrain Valley School Dist. No. Re-1J,*
464 F.3d 1182 (10th Cir. 2006) ............................................................................... 18

*Malley v. Briggs,*
106 S.Ct. 1092 (1986) ............................................................................................... 23

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
106 S.Ct. 1348 (1986) ................................................................................................. 5

*McDonnell Douglas Corp. v. Green,*
93 S.Ct. 1817 (1973) ............................................................................. 7, 12, 13, 30

*Medina v. Cram,*
252 F.3d 1124 (10th Cir. 2001) ................................................................................. 5

*Mitchell v. City of Wichita, Kansas,*
140 F.App'x 767 (10th Cir. 2005) ............................................................................ 15

*Monell v. Department of Social Services of City of New York,*
98 S.Ct. 2018 (1978) ................................................................................................. 15

*Nard v. City of Oklahoma City,*
153 F.App'x 529 (10th Cir. 2005) ...................................................................... 19, 20

*National R.R. Passenger Corp. v. Morgan,*
122 S.Ct. 2061 (2002) ................................................................................................. 6

*N.H. v. Presbyterian Church (U.S.A.),*
998 P.2d 592 (1999) ................................................................................................. 25

*New York Times Co. v. Sullivan,*
84 S.Ct. 710 (1964) ................................................................................................... 26

*Nichols v. Pray, Walker, Jackman, Williamson & Marler, a Professional Corp.,*
144 P.3d 907 (Okla. Civ. App. Div. 3, 2006) ................................................................. 28

*Orr v. City of Albuquerque,*
417 F.3d 1144 (10th Cir. 2005) ....................................................................................... 7

*Parker v. Board of Regents of Tulsa Jr. College,*
981 F.2d 1159 (10th Cir. 1992) ....................................................................................... 9

*Pennsylvania State Police v. Suders,*
124 S.Ct. 2342 (2004) ............................................................................................... 9, 15

*Peterson v. Grisham,*
594 F.3d 723 (10th Cir. 2010) ...................................................................................... 29

*Polson v. Davis,*
895 F.2d 705 (10th Cir. 1990) ...................................................................................... 25

*Potts v. Davis County,*
551 F.3d 1188 (10th Cir. 2009) .............................................................................. 16, 19

*Reeves v. Sanderson Plumbing Prods.,*
120 S.Ct. 2097 (2000) .......................................................................................... 5, 7, 12

*Renaud v. Wyoming Dept. of Family Services,*
203 F.3d 723 (10th Cir. 2000) ...................................................................................... 20

*Reno v. Flores,*
113 S.Ct. 1439 (1993) ................................................................................................... 18

*Revell v. Hoffman,*
309 F.3d 1228 (10th Cir. 2002) .................................................................................... 26

*Rosenblatt v. Baer,*
86 S.Ct. 669 (1966) ................................................................................................ 26, 27

*Ross v. City of Perry, Ga.,*
396 F.App'x 668 (11th Cir. 2010) .................................................................................. 9

*Sabourin v. University of Utah,*
676 F.3d 950 (10th Cir. 2012) ........................................................................... 7

*Schovanec v. Archdiocese of Oklahoma City,*
188 P.3d 158 (2008) ......................................................................................... 26

*Siegert v. Gilley,*
111 S.Ct. 1789 (1991) ................................................................................. 20, 23

*Simington v. Parker,*
250 P.3d 351 (Okla. Civ. App. Div. 1, 2011) ............................................... 28, 29

*St. Mary's Honor Center v. Hicks,*
113 S.Ct. 2742 (1993) ................................................................................. 12, 30

*State v. Dabney,*
141 P.2d 303 (1943) .......................................................................................... 28

*State ex rel., Bd. of Regents of University of Oklahoma v. Lucas,*
297 P.3d 378 (2013) ...................................................................................... 17, 18

*Stidham v. Peace Officer Standards and Training,*
265 F.3d 1144 (10th Cir. 2001) .......................................................................... 20

*Texas Dept. of Community Affairs v. Burdine,*
101 S.Ct. 1089 (1981) .................................................................................... 7, 30

*Torix v. Brown,*
295 P.3d 1138 (Okla. Civ. App. Div. 3, 2012) .................................................... 26

*University of Texas Southwestern Medical Center v. Nassar,*
133 S.Ct. 2517 (2013) ....................................................................................... 13

*Walker v. United Parcel Service of America, Inc.,*
76 F.App'x 881 (10th Cir. 2003) .......................................................................... 9

*Washington v. Glucksberg,*
117 S.Ct. 2258 (1987) ........................................................................................ 18

*Will v. Michigan Dept. of State Police,*
109 S.Ct. 2304 (1989) ........................................................................................ 29

*Workman v. Jordan,*
32 F.3d 475 (10th Cir. 1994) ................................................................. 19

*Yearous v. Niobrara County Memorial Hosp. by and through Bd. of Trustees,*
128 F.3d 1351 (10th Cir. 1997) ............................................................... 9

## STATUTES

OKLA. STAT. tit. 10A, § 2-7-202(A)(1) ....................................................... 17

OKLA. STAT. tit. 10A, § 2-7-202(A)(4) ....................................................... 17

OKLA. STAT. tit. 12, § 95(A)(4) ................................................................. 27

OKLA. STAT. tit. 12, § 151, *et seq.* .......................................................... 28, 29

OKLA. STAT. tit. 12, § 1441 ...................................................................... 26

OKLA. STAT. tit. 12, § 1442 ...................................................................... 26

OKLA. STAT. tit. 40, § 172 ........................................................................ 28

OKLA. STAT. tit. 51, §24A.7(B)(3) ............................................................. 28

OKLA. STAT. tit. 74, § 840-5.1A(A) ............................................................ 17

42 U.S.C. § 1981 ............................................................................. 7, 22, 29

42 U.S.C. § 1983 ....................................................................... 7, 15, 22, 29

42 U.S.C. § 2000e ................................................................................ 16

42 U.S.C. § 2000e-2(m) ......................................................................... 13

## RULES

Fed. R. Civ. P. 56 ................................................................................... 1

## OTHER

95 A.L.R. 5th 1 ................................................................................................................ 27

U.S. CONST. amend XI ........................................................................................................ 29

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

ELIZABETH STEWART,                                )
                                                  )
            Plaintiff,                            )
                                                  )
v.                                                )        Case No. CIV-12-1297-C
                                                  )
STATE OF OKLAHOMA *ex rel.,* OKLAHOMA             )
OFFICE OF JUVENILE AFFAIRS, and GENE              )
CHRISTIAN, individually as former Executive       )
Director of the Oklahoma Office of Juvenile Affairs,  )
                                                  )
            Defendants.                           )

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE ROBIN CAUTHRON:

Pursuant to Fed. R. Civ. P. 56, Defendants, the Oklahoma Office of Juvenile Affairs and Gene Christian, former OJA Director submit the following Motion for Summary Judgment:

### STATEMENT OF THE CASE

Plaintiff, Elizabeth Stewart, sues her former employer the Oklahoma Office of Juvenile Affairs and former OJA Executive Director Gene Christian, claiming: race discrimination (Count I, II), gender discrimination (Count III), retaliation (Count II), deprivation of equal protection rights (Count IV), denial of procedural and substantive due process rights (Count V), defamation (Count VIII), blacklisting (Count IX), negligent supervision (Count VI) and intentional infliction of emotional distress (Count VII). [Doc. 9]. Defendants have answered denying the allegations and asserting their sovereign and qualified immunity. [Docs. 13 and 15]. The case is set for Jury Trial January, 2014. [Doc. 20].

## STATEMENT OF FACTS

On October 2nd 2011, the OJA was in the midst of responding to the third major incidents of violence at its COJC residential juvenile facility. (Ex. 5 p. 183 ¶ 4; Ex. 2, at pp. 67, ln. 23 - p. 69, ln. 1-5; p. 90; Ex. 4, at p. 120). The incidents which occurred over a span of about two months included: one juvenile suffering brain damage in an assault, local law enforcement being called to quell a small riot and three residents escaping. (Ex. 2, at pp. 67-68; 72, ln. 8-18; Ex. 4, at p. 120). Elizabeth Stewart was in charge of all the facilities. (Ex. 1, at p. 3, ln. 25 - p. 4, ln. 1-16; Ex 2, at p. 59, ln. 21-25; p. 63, ln. 21 - p. 64, ln. 12; Ex. 4, at pp. 161-163). Mike Moriarty was the superintendent over COJC where all the incidents occurred. (Ex. 2, at p. 66, ln. 20-25). The incidents, bad in and of themselves, complicated OJA's concurrent attempt to end a lengthy lawsuit which began after Stewart's arrival and included consent decree monitoring. (Ex. 5, at pp. 182-183, ¶ ¶s 3 and 4; Ex. 1, at p. 6, ln. 9 - p. 8, ln. 3; ; Ex. 2, at p. 78, ln. 6 - p. 79, ln. 7). The agency had instituted a plan to conclude the consent decree by reducing the institutional population, closing the problematic Radar facility and transferring, over time, the remaining juveniles to COJC. (Ex. 5, at pp. 182 - 183, ¶ 4; Ex. 1, at. p. 8, ln. 21 - p. 9, ln. 21; p. 10, ln. 10-21; p. 11, ln. 5-13 and ln. 18-22; p. 12, ln. 6-23; Ex. 2, p. 57, ln. 14-20; p. 78, ln. 6 - p. 79, ln. 7; p. 80, ln. 5; p. 81, ln. 13-18; Ex. 4, at pp. 164-179). Christian had warned Stewart when the Radar institution closed, COJC would come under the spotlight. (Ex. 2, at p. 76, ln. 8-19; Ex. 1, at p. 11, ln. 5-13). It did, the agency received bad press as a result of the incidents. (Ex. 5, at pp. 182-183, ¶ 4; Ex. 2, at p. 68, ln. 1-6). OJA Executive Director, Gene Christian, believed changes had to be made, immediately. (Ex. 5, at pp. 182-183, ¶ 4; Ex. 2, at pp. 68-69, ln. 1-5).

The day following the third incident, Christian relieved Stewart and Moriarty of their duties. (Ex. 5, pp. 182-183, ¶ 4; Ex. 2, p. 69, ln. 1-5). Each continued to receive pay but were placed on leave. (Ex. 5, pp. 182-183, ¶ 4; Ex. 2, p. 72, ln. 22-23; p. 75, ln. 5-11; p. 67, ln. 5-17). In response to press inquiries, the OJA communications officer reported both had been relieved of duty. (Ex. 5, at p. 183, ¶ 5; Ex. 2, at p. 102, ln. 3-16; ln. 22-25 - p. 103, ln. 7). Christian had authorized raises for Stewart in the past and acquiesced in good evaluations of both. (Ex. 1, at p. 5, ln. 15-17; Ex. 4, at pp. 142-153). Stewart's most recent evaluation had concluded before the second and third incident. (Ex. 4, at pp. 120 and 147). Stewart had evaluated Moriarty as competent, meeting and exceeding standards. (Ex. 1, at p. 14, ln. 16-19; p. 18, ln. 19 - p. 20, ln.3).

At the time of the incidents, a plan was in place: the institutionalized population had been reduced, positions had been approved, but employee morale and retention remained a problem; ultimately, Christian believed the incidents resulted from a variety of problems including management. (Ex. 5, at p. 183, ¶ 5; Ex. 2, at pp. 56, ln. 9-23 - p. 57, ln. 14-20; p. 62, ln. 21- p. 64, ln. 12; p. 65, ln. 10-11; pp. 67-68; p. 85, ln. 5-15; p. 86, ln. 10-14 and ln.20-25 - p. 87, ln. 1-3; p. 88, ln. 21- p. 89, ln. 5; p. 91, ln. 17-21; Ex. 1, at pp. 12-14; 15, ln. 18 - p. 16, ln. 1; p. 17, ln. 15-20). He considered a transfer but could not find what he believed a satisfactory alternative. (Ex. 2, at p. 99, ln. 24-25 - p. 100, ln. 1-13; p. 101, ln. 4-9 and ln. 14-19; p. 103, ln. 3-7). He presented each with the option of resignation or termination. (Ex. 5, at p. 183, ¶ 5; Ex. 1, p. 19, ln. 4-9; p. 36, ln. 6-7; Ex. 2, at p. 67, ln. 1-14). Moriarity opted to retire missing the last voluntary buy-out by just months. (Ex. 5, at p. 183, ¶ 5; Ex. 4, pp. 439, 568-569). Stewart rode out her leave, beyond the normal maximum allowed, and resigned. (Ex. 1, at p. 45, ln. 18-25 - p. 46, ln. 1-16; p. 38, ln. 1-13 and ln. 16-18; p. 39, ln.

11-14; Ex. 4, at p. 91). Both Stewart and Moriarity were 'at will' employees. (Ex. 1, pp. 22, ln. 15 - p. 23, ln. 1-4; p. 38, ln. 16-18; Ex. 4, pp. 135-141). Christian replaced Stewart with Dick Parrish, who continued in his role as a deputy and assumed Stewart's duties. (Ex. 5, at p. 183, ¶ 5; Ex. 4, p. 62, ln. 15-24).

A year before the incidents, Stewart had complained to Christian about a racially offensive story by Christian's administrative assistant. (Ex. 4, p. 118; Ex. 1, p. 26, ln. 5-11). At an agency dinner, the assistant had told a story of how as kids, one Halloween, they had dressed as Halloween members painting their faces black and wearing a noose. (Ex. 1, p. 23, ln. 24-25 - p. 24, ln. 1-20, p. 25, ln. 2-7). Stewart emailed Christian about the story a couple of weeks after the dinner. (Ex. 1, p. 27, ln. 15-20). Christian had told the assistant to provide a written a apology, verified that she had done so and considered the matter resolved. (Ex. 5, p. 183, ¶ 6; Ex. 2 p. 92, ln. 24-25 - p. 93, ln. 9; p. 95, ln. 14-17; p. 96, ln. 2-10). The assistant also apologized to Board member Deanna Hartley-Kelso, who heard the comment but did not perceive it as intended to offend but as an example of the insensitivity of kids. (Ex. 6, p.187-191). The termination of Stewart and Moriarity was nearly a year later. (Ex. 5, p. 183 ¶ 6; Ex. 4, pp. 118 -119). This, and her complaint after her termination, were Stewart's only complaint of discrimination or retaliation while she worked at OJA. (Ex. 1, pp. 33-34).

Christian retired from OJA in September, 2012. (Ex. 2, at  p. 51). No future employers contacted him concerning Stewart during his time at OJA or after. (Ex. 1, p. 41, ln. 5-10; Ex. 2, p. 99, ln. 24-25 - p. 100, ln. 1-2).

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides summary judgment shall be granted if there is not a genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  A fact is material if resolution of the fact would affect the outcome of the case under governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505, 2510 (1986).  A material fact is genuine if a reasonable fact finder could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505, 2510 (1986). Neither party may rest on pleadings or conclusions to demonstrate the absence or existence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 106 S.Ct. 2548, 2553 (1986). The Court reviews the record taken as a whole and draws all reasonable inferences in favor of the non-moving party. <u>Reeves v. Sanderson Plumbing Prods. 120 S.Ct. 2097, 2110 (2000);  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u> 106 S.Ct. 1348, 1356 (1986).

In addition, because this suit involves an individual defendant who has asserted his qualified immunity, the plaintiff has the burden of proving specific facts which demonstrate defendant knew his actions would violate plaintiff's rights. <u>Anderson v. Creighton</u>, 107 S.Ct. 3034, 3038-3039 (1987).  Qualified immunity provides interlocutory appeal is proper when the district court's legal determination turns on the materiality or relevancy of facts to the issue of qualified immunity, not the genuineness or sufficiency of the facts. <u>Medina v. Cram</u>, 252 F.3d 1124, 1130 (10th Cir.  2001).  The Court reviews a district court's order denying summary judgment on grounds of qualified immunity, *de novo*. *Medina* at 1128.

### SUMMARY OF THE ARGUMENT

First, Stewart has failed to state a *prima facie* case of gender or race discrimination or retaliation. Elizabeth Stewart, the Director of Institutions at the Office of Juvenile Affairs,

along with Mike Moriarity, the Superintendent of the COJC institution, were terminated following escalating incidents of violence at the COJC institution. Stewart is a Black female. Moriarity is a White male. The incidents, an assault resulting in brain trauma, a riot, and an escape occurred within two months and at a time when the OJA was trying to conclude a Department of Justice consent decree. Stewart has not shown similarly situated individuals were treated more favorably.

Second, Stewart's prior complaint of an offensive Halloween story by an administrative assistant, which had occurred nearly a year before the 2011 terminations, is not demonstrative of retaliation or a hostile environment. At the time of Stewart's 2010 report the assistant was told by Christian to apologize and she personally delivered a written apology to Stewart. Third, both Stewart and Moriarity were 'at will' employees without a property interest in their positions. Fourth, OJA's release of a statement that both individuals were 'relieved of duty' is not defamatory and is privileged as comment on a public official. Finally, Christian asserts he is entitled to qualified immunity because his decision to address the problems in the institution with a change in the management responsible for the Institutions and the particular facility was reasonable.

## ARGUMENT AND AUTHORITIES

In the case of <u>National R.R. Passenger Corp. v. Morgan</u>, 122 S.Ct. 2061, 2070 (2002) the Court separated discriminatory employment claims into discrete acts and hostile environment claims, stating the proof varies with the claim. Defendants address Plaintiff's discrimination and retaliation claims in the same fashion separating her claim of forced termination as a discreet act of disparate treatment from her claim of a hostile environment by way of the racial Halloween story.

I.     **STEWART HAS NOT ESTABLISHED A CLAIM OF DISCRIMINATION OR RETALIATION BY DISPARATE TREATMENT**

An employee's Title VII disparate treatment claims of discrimination and retaliation, are analyzed under the *McDonnell Douglas* burden shifting rubric as applied within the summary judgment standard of review. Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2106 (2000) citing McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973). That is, the employee must first establish a *prima facie* case. The burden then shifts to the employer to produce a legitimate reason for its actions. However, the employee always bears the ultimate burden of proving intentional discrimination. *Reeves* at 2106. The same formula and elements are applied to §1981 and §1983 employment discrimination claims. Drake v. City of Fort Collins, 927 F.2d 1156, 1162 (10th Cir. 1991).

   A.     **Stewart has Failed to Establish a *Prima Facie* Case of Discrimination or Retaliation.**

At the *prima facie* stage of a claim, a Plaintiff need only make a minimal showing to set sail to a rebuttable presumption of discrimination or retaliation. Texas Dept. of Community Affairs v. Burdine, 101 S.Ct. 1089, 1094 (1981); Sabourin v. University of Utah, 676 F.3d 950, 958 (10th Cir. 2012).

      1)     **Stewart has not demonstrated a *prima facie* case of race or gender discrimination.**

The elements necessary for a *prima facie* claim of discrimination are: 1) the employee is a member of a protected class, 2) similarly situated employees outside the protected group were treated more favorably under comparable circumstances, and 3) the employee suffered an adverse action. Orr v. City of Albuquerque, 417 F.3d 1144, 1149 (10th Cir. 2005). A similarly situated employee is one who shares the same supervisor and subject to the same

standards governing performance along with other relevant employment circumstances. Green v. New Mexico, 420 F.3d 1189, 1194-1195 (2005). OJA and Christian concede Stewart is a member of a protected class but assert Stewart fails to demonstrate the other two elements of a *prima facie* case of discrimination. Specifically, Stewart fails to show she was treated less favorably than Mike Moriarity, a white male, who was terminated at the same time for the same reasons or that she suffered an adverse action by submitting her voluntary resignation.

First, Stewart has not demonstrated similarly situated employees were treated more favorably. (Ex. 1, pp. 21-22). The same day that Stewart was terminated, Mike Moriarity, a white male, was also terminated. (Ex. 1, pp. 18-19). Moriarity and Stewart are similarly situated in that both were terminated over security incidents at COJC. (Ex. 1, p. 19; Ex. 2 pp. 67-69). Stewart had responsibility over all the institutions. (Ex. 1, p. 4; Ex. 2, pp. 59, 63-64; Ex. 4, pp. 161-163). Moriarity had responsibility over the COJC facility. (Ex. 2, p. 66). Both were terminated by Christian and both were given an option to resign or be terminated. (Ex. 2, p. 67-69). Moriarity retired ending over a decade at OJA. (Ex. 5, p.183 ¶4). Stewart chose to resign after expending her accumulated leave. (Ex. 1, pp. 38-39; 45-46; Ex. 4, p.119). Stewart has not demonstrated she was treated less favorably than similarly situated individuals.

Second, Stewart has not shown her resignation constitutes an adverse employment action. Admittedly a termination as is an adverse employment action; however, employee resignations are presumed to be voluntary unless: 1) by coercion or duress or 2) by deceiving or misrepresenting material. Hargray v. City of Hallandale, 57 F.3d 1560, 1568 (11th Cir. 1995) citing Christie v. U. S., 518 F.2d 584, 587-588 (Ct. Cl. 1975). Voluntariness is viewed

under the totality of circumstances including: an alternative to resignation, an employee's understanding of the choice, a reasonable time in which to choose, whether an employee selects effective date of resignation, and whether an employee had advice of counsel. Yearous v. Niobrara County Memorial Hosp. by and through Bd. of Trustees, 128 F.3d 1351, 1356 (10th Cir. 1997); Parker v. Board of Regents of Tulsa Jr. College, 981 F.2d 1159, 1162 (10th Cir. 1992); Walker v. United Parcel Service of America, Inc., 76 F.App'x 881, 890 (10th Cir. 2003). The fact that a choice is between unpleasant alternatives does not make the resignation coerced or under duress because the employee still has a choice. Hargray v. City of Hallandale, 57 F.3d 1560, 1568 (11th Cir. 1995).[1]

Stewart may not construe her option to resign, in lieu of termination, as involuntary. Giving Stewart the option of resignation is not indicative of an adverse action by the employer motivated by discriminatory animus. Stewart accepted the benefits of the bargain including that the record would reflect her resignation, not a firing. (Ex. 1, pp. 38-39, 45-46; Ex. 4, p. 119). Also, she accepted the benefit of the bargain after having 'labored long and hard considering the options' giving her both an opportunity to weigh the pros and cons of the agreement and the ability to obtain counsel. (Ex. 4, p. 119). Indeed, she did not resign until nearly two months after the third incident and she also selected the date of her effective resignation. (Ex. 2, p. 90; Ex. 4, p. 119). Finally, she accepted the benefit of running out

---

[1] The concept of a constructive discharge based, on intolerable workplace conditions, first arose in the labor law context and was subsequently adopted by the circuits in Title VII hostile environment claims. Pennsylvania State Police v. Suders, 124 S.Ct. 2342, 2352-2352 (2004). The theory that employee resignations are presumed voluntary arises in another labor context, Merit System Protection Board claims, and has been applied in other employment settings including Title VII. Ross v. City of Perry, Ga., 396 F.App'x 668, 670 (11th Cir. 2010) citing Hargray v. City of Hallandale, 57 F.3d 1560, 1568 (11th Cir. 1995).

her leave time beyond that normally allowed. (Ex. 1, pp. 45-46). And, she accepted all the benefits of the agreement without any suggestion to Christian or OJA that she believed it racially discriminatory or retaliatory. (Ex. 4, p. 9; Ex. 5, p. 183, at ¶6). Stewart did not file her EEOC charge until after she had left the agency. (Ex. 4, p. 121). The benefits accorded Stewart belie an inference of discriminatory animus. OJA and Christian assert Stewart has not rebutted the presumption that her resignation was voluntary and her decision to resign supplants any adverse action by Defendants.

      2)     **Stewart has not demonstrated a *prima facie* case of retaliation.**

The elements of a *prima facie* claim of retaliation differ from a discrimination claim. In a retaliation claim the employee must demonstrate: (1) she engaged in a protected activity, (2) she suffered a materially adverse employment action, and (3) that there is a causal connection between her protected activity and the employer's adverse employment action. E.E.O.C. v. PVNF, L.L.C., 487 F.3d 790, 803 (10th Cir. 2007). OJA and Christian concede Stewart's complaint regarding the Halloween story constitutes a protected activity but assert Stewart fails to make the second and third elements of a *prima facie* case of retaliation. Specifically, Stewart has not shown a causal connection in her termination a year after the resolution of her complaint nor has she demonstrated her resignation in lieu of termination is an adverse action by the employer.

The third element of a *prima facie* case of retaliation, that of a causal connection between the protected activity and the adverse action, is generally shown by temporal proximity between the protected speech and the adverse action or a showing similarly situated individuals were treated more favorably. Clark County School Dist. v. Breeden, 121 S.Ct. 1508, 1511 (2001)(temporal proximity to establish *prima facie* case of causality must

be very close in time); <u>Antonio v. Sygma Network, Inc.</u>, 458 F.3d 1177, 1182 (10th Cir. 2006)(retaliatory motive could be inferred from disparate application among similarly situated employees)

In this case, Stewart's report concerning the Halloween story was nearly a year before her termination. (Ex. 4, p. 118; Ex. 1, p. 32).   A year filled with a multitude of intervening events including severe security incidents at the juvenile facilities as well as the attempt to conclude a consent decree. (Ex. 1,  p. 20; Ex. 2 pp.  67-68, 90; Ex. 4, pp. 54,  118-119; Ex. 5, pp. 182-183, at ¶¶ 3-4).  Not only was the report distant in time to her resignation,  it was well after the matter appeared resolved by the administrative assistant's written apology. (Ex. 1, p. 31; Ex. 2, pp. 92-97).[2]  Moreover, Stewart points to no individuals that were treated more favorably under similar circumstances.  (Ex. 1, pp. 21-22).  Mike Moriarity, a white male in charge of the institution, was terminated at the same time and for the same reasons by the same supervisor and he did not have a claim of protected activity against Christian or OJA. (Ex. 1, pp. 19 and 36; Ex. 2, pp. 67-69).  Stewart has not demonstrated  her report of the racially charged Halloween story caused Christian to terminate her.

The second element, a materially adverse action is more specifically defined as one in which a reasonable employee would have been dissuaded from making or supporting a charge of discrimination.  <u>Burlington Northern and Santa Fe Ry. Co. v. White</u>, 126 S.Ct. 2405, 2415 (2006).  For the reasons referenced above OJA and Christian assert Stewart's

---

[2]  Stewart's EEOC charge filed nearly 1 ½ years after her report fails to mention the  October 2010 Halloween story, the subsequent apology or that she believed her termination was in retaliation.  That claim was not investigated.  (Ex. 4, pp. 121-125). Stewart's retaliation claim is subject to dismissal for failure to exhaust her administrative remedies.  <u>Jones v. U.P.S., Inc.</u>, 502 F.3d 1176, 1186 (10th Cir.  2007).

voluntary resignation, with its attendant benefits, bars her claim she suffered a materially

adverse employment action caused by her protected complaint.

### B.    OJA's Legitimate Reasons for Terminating Stewart.

If Plaintiff demonstrates a *prima facie* case, then, under the *McDonald Douglas*

formula, the tide changes shifting the burden to the Defendant to demonstrate a legitimate

non-discriminatory reason for its actions. The Defendant's burden is one of production, not

persuasion, and can involve no credibility assessment. Reeves v. Sanderson Plumbing

Products, Inc., 120 S.Ct. 2097, 2106 (2000) quoting St. Mary's Honor Center v. Hicks, 113

S.Ct. 2742, 2748-2749 (1993).

It was Christian's decision to relieve Stewart and Moriarity of duty. (Ex. 2, p. 67, ln.

15-17). He made the decision in response to three successive and escalating security

incidents over a short time period. (Ex. 2, pp. 67-69). Incidents which occurred at a time

when OJA was attempting to conclude a federal consent decree. (Ex. 2, pp. 78-79). The first

serious incident, an assault, involved residents and staff. The second incident the riot

expanded to residents, staff and local law enforcement. His decision to terminate came when

the third incident which encompassed not only residents, staff, local law enforcement but

with the escape, the general public being put at risk. (Ex. 2, pp. 67-69). All of the incidents

occurred at the COJC facility over two months. (Ex. 2, p. 72; Ex. 4, p. 120). Christian was

called to answer to the public and government officials who saw the incidents as defining

OJA (Ex. 2, p. 68). Despite working with Stewart and Moriarity for several years and as

illustrated in employee evaluations, believing each to be a good employee, Christian held

the facilities management, in the Institutional Director and the COJC Superintendent

responsible. (Ex. 2, pp. 68-69, 85-89, 91). With their replacement he intended to re-gain

control over the institutions, impress on staff these incidents were unacceptable and conclude the federal suit. (Ex. 2, pp.68-69).  The Institutions Division is but one of six Divisions at OJA which together provide a wide range of services to Oklahoma juveniles. (Ex. 5, p. 182 ¶ 2; Ex. 2, pp. 53-55; Ex. 4, p. 156).  He did not consider the race of the individuals, nor did he consider Stewart's year-old complaint about his administrative assistant. (Ex. 5, pp.183 at ¶ 5, pp. 184, at ¶ 8). He believed that the complaint resolved the previous year when he had told the assistant to write an apology for her offensive conduct. (Ex. 5, p.183 at ¶ 5, p. 184, at ¶ 8). Stewart did not suggest further action after the apology. (Ex. 1,  p. 33, ln. 11-15).

### C.    Stewart Failed to Show Intentional Discrimination or Retaliation.

Once the Defendant presents a legitimate reason, the buoyant presumptions set afloat by plaintiff in the *prima facie* stage are rebutted.  In the final stage of the *McDonnell Douglas* paradigm a plaintiff's ultimate burden is to show her protected class was a motivating factor in her termination.   University of Texas Southwestern Medical Center v. Nassar, 133 S.Ct. 2517, 2526 (2013) (42 U.S.C.A. § 2000e-2(m) status based discrimination uses lesser causation standard).  In a retaliation claim the Plaintiff's ultimate burden, is more onerous, it is to demonstrate that but for the protected activity the adverse action would not have ensued.  University of Texas Southwestern Medical Center v. Nassar, 133 S.Ct. 2517, 2534 (2013).   Context and circumstances matter in analyzing the retaliatory nature of an employer's conduct.  Burlington Northern and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2415 (2006).

Stewart has failed to show her race, gender, or retaliation was one of the reasons for her termination.  She has failed to provide evidence that  the assault, riot and escape were a

pretext to terminate her. Stewart, herself, states the reason she was terminated was because of the bad press that had occurred as a result of the incidents. Christian echos this reason. (Ex. 1, p. 37; Ex. 2, pp. 68-69; Ex. 5, p. 183 at ¶ 4-5). That Stewart was a good employee and disagrees with Christian's decision looped back to her race, gender and complaint is insufficient to infer discriminatory intent. Her claim Christian was also responsible and should have been fired in lieu of her and Moriarity, ignores her responsibility. Christian was the director of the agency and over six divisions with an annual budget in excess of $110 million, only the Institutions Division and in particular the COJC institution had very intensely come to the public forefront. ( Ex. 2, pp. 52-55, 68; Ex. 4, p. 84 Ex. 5, p. 182 at ¶ 2, p. 183 at ¶ 5). Christian did ask the Board if he they wanted his resignation, the Board declined. (Ex 2, p. 62; Ex. 3, p. 114; Ex. 5, p. 183 at ¶ 5). Moreover, Stewart endorsed Moriarity's management of the institution and repeatedly evaluated him as exceeding standards, yet security in the institution failed. (Ex. 1, p. 14, ln. 13-20; Ex. 4, pp. 148-153). Nor may the Halloween story be used to infer racial animus. Christian acknowledged the offensiveness of the assistant's conduct and ordered her to provide a written apology. (Ex. 2, pp. 92-97). Stewart recalled no other inappropriate racial or gender comments during her tenure at OJA. (Ex. 1, pp. 23-24, 27, ln. 8-14, p. 31, ln.2-5). Stewart failed to establish her termination was motivated by intentional racial or gender discrimination. Nor has she demonstrated under the higher standard attributed to claims of retaliation, that but for her complaint she would not have been terminated.

## II.   STEWART HAS NOT ESTABLISHED A TITLE VII CLAIM OF A DISCRIMINATORY OR RETALIATORY HOSTILE ENVIRONMENT

A hostile environment claim is one in which the workplace is permeated with racially discriminatory intimidation and ridicule sufficiently severe or pervasive to be abusive to a

reasonable individual. Harris v. Forklift Systems, Inc. 114 S.Ct. 367, 370 (1993). In making the determination the Court considers all the circumstances such as frequency and severity of the conduct and whether it was physically threatening or humiliating. *Harris* at 370. Stray remarks in the workplace by nondecisionmakers or unrelated to the decisional process do not demonstrate discriminatory animus. Mitchell v. City of Wichita, Kansas, 140 F.App'x 767, 778 (10th Cir. 2005). Liability for a hostile environment is permissible under a theory of vicarious liability. Faragher v. City of Boca Raton, 118 S.Ct. 2275, 2292-2293 (1998). Liability under §1983, however, may not be based on vicarious liability. Monell v. Department of Social Services of City of New York, 98 S.Ct. 2018, 2036 (1978).

The concept of constructive discharge, utilized in hostile environment claims, requires greater severity or pervasiveness of harassment than that required to prove a hostile environment. Pennsylvania State Police v. Suders, 124 S.Ct. 2342, 2354 (2004). A constructive discharge requires abusive conditions so intolerable a reasonable employee would be compelled to resign. *Suders* at 2354. The reasoning is such abusive conditions are assimilated into a discharge by the employer through forcing the employee to the involuntarily terminate themself. *Suders* at 2351.

In this case, the one offensive story by a non-supervising individual and for which the individual was told to provide a written apology negates a claim of a racially hostile environment and the more evidentiary onerous claim of a constructive discharge. Christian did not make the statement nor did he condone it, it was his assistant. The assistant was not in a position of authority over Stewart. (Ex. 1, p. 26). It was Christian who insisted on the

apology. (Ex. 1, p. 26; Ex. 2, pp. 92-97). Outside the one story Stewart did not report and

has not demonstrated a hostile environment. (Ex. 1, pp. 23-24, 27, ln. 8-14, p. 31, ln.2-5).

Stewart, at the time, did not complain that the apology was insufficient. (Ex. 1, pp. 32-33).

Finally, Stewart did not include the October 2010 comment or a retaliation claim in her

EEOC charge of March 2012. (Ex. 1, pp. 33-34; Ex. 4, p. 67)  The three hundred day

limitation to exhaust her administrative remedies on the claim expired five months (9/2011)

before she filed her charge. 42 U.S.C.A. § 2000e.

### III.   STEWART WAS NOT DEPRIVED OF PROCEDURAL OR SUBSTANTIVE DUE PROCESS OR EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT

The Fourteenth Amendment to the United States Constitution, § 1, the Due Process

clause, states no State shall deprive any person of liberty or property without due process of

law. Procedural due process ensures the state will not deprive a party of property without

engaging in fair procedures;  substantive due process ensures the state will not deprive a

party of property for an arbitrary reason. Hyde Park Co. v. Santa Fe City Council, 226 F.3d

1207, 1210 (10th Cir. 2000).  To demonstrate a violation of procedural or substantive due

process an employee must first show a property interest in continued employment. Potts v.

Davis County, 551 F.3d 1188, 1192 (10th Cir. 2009).

### A.   Stewart does not Have a Property Interest in Continued Employment at OJA.

Property interests are not created by the Fourteenth Amendment, but rather, defined

by state law that secures benefits and supports claims to those benefits. Board of Regents

of State Colleges v. Roth, 92 S.Ct. 2701, 2709 (1972); Darr v. Town of Telluride, Colo., 495

F.3d 1243, 1257 (10th Cir. 2007)(Due process clause does not preclude public employer from

an at will employment relationship). Oklahoma recognizes employment contracts of an

indefinite duration are 'at will' and terminable without cause. Burk v. K-Mart Corp., 770

P.2d 24, 27-28 (1989); Hinson v. Cameron, 742 P.2d 549, 552, 554 (1987). Persons in

unclassified positions in Oklahoma state government have no right or expectation of

continued employment and may be separated from employment at anytime with or without

cause. OK ST T. 74 § 840-5.1A (A).

In this case, Stewart alleges violation of her property interests both procedurally and

substantively. However, Stewart does not have a property interest in her continued

employment at OJA that entitles her to Fourteenth Amendment protection. Stewart is not a

classified employee with the protections provided a classified employee (Ex. 1, pp. 22-23,

38; Ex. 4, pp. 135-141). Stewart's position of Division Director of Institutions is statutorily

created position subject to appointment by the Executive Director and the Board and is

responsible for the institutions operated by the Office of Juvenile Affairs. OK ST T. 10A §

2-7-202 (A)(1) and (A)(4). (Ex. 4, pp. 161-163). It is an at will position and as such does not

create a property interest.

### B.    Stewart was not Deprived of Procedural Due Process.

Though a state statute may create a property interest, the due process required

attendant to a taking of the property is based on constitutional parameters appropriate to the

nature of the case. Cleveland Bd. of Educ. v. Loudermill, 105 S.Ct. 1487, 1493 (1985)(what

process is due is not found in the state's statute); State ex rel. Bd. of Regents of University of Oklahoma v. Lucas, 297 P.3d 378, 392 (2013)(OAPA does not set due process parameters).  To determine what process is constitutionally due, courts balance three factors: 1) the private interest that will be effected, 2) the risk of erroneous deprivation through the procedures used, and 3) the government's interest.  Kirkland v. St. Vrain Valley School Dist. No. Re-1J, 464 F.3d 1182, 1192-1193 (10th Cir. 2006).  For deprivation of a property right ensconced in a government job, due process includes notice and an opportunity to be heard. Loudermill at 1495.

In this case, Stewart's meeting with Christian relieving her of duty and the placing her status on the Board agenda followed by her resignation two months later balanced:  the agency's interest in managing its institutions, Stewart's interest in an at will position, and the government interest in addressing safety and security concerns of the residents, staff, and the public. (Ex. 2, pp. 68-69; Ex. 4, p. 60; Ex. 5, p. 183 at ¶ 5).  OJA asserts Stewart received due process appropriate to the position.

**C.   Stewart was not Deprived of Substantive Due Process.**

Substantive due process protects from government impingement on fundamental constitutional rights and liberty interests regardless of the process afforded.  Reno v. Flores, 113 S.Ct. 1439, 1447 (1993).  The Supreme Court has yet to determine public employment is a fundamental constitutional right protected by substantive due process.  However, past decisions have counseled restraint and reserved the substantive due process protection to freedoms in the Bill of Rights and specially protected rights such as marriage, bodily

integrity, and medical treatment.  Washington v. Glucksberg, 117 S.Ct. 2258, 2267 (1987).

The Tenth Circuit is conflicted on the issue.  In Potts v. Davis County, 551 F.3d 1188, 1196

n. 1 (10th Cir. 2009) the court recognized it was undecided whether an employee with a

property right in state created employment is protected by substantive due process.  However,

Darr v. Town of Telluride, Colo., 495 F.3d 1243, 1257, (10th Cir. 2007) assumed property

interest relying on Curtis v. Oklahoma City Public Schools Bd. of Educ., 147 F.3d 1200,

1215 n. 17 (10th Cir. 1998), although *Curtis* specifically left  undecided the issue of a

substantive property interest.    Nevertheless, the  criteria for substantive due process in

executive governmental decisions is action which is arbitrary and capricious without a

rational basis so much so that it shocks  the conscience.  County of Sacramento v. Lewis, 118

S.Ct. 1708, 1716 (1998).

     In this case, Stewart did not have a substantive interest in her job and the decision to

relieve Stewart of duty was not arbitrary or capricious.  The rational basis for the decision

was to respond to a series of escalating incidents compromising safety and security and

targeting those responsible for the institutions where the incidents occurred.  (Ex 2, pp. 68-

69; Ex. 5, p. 183 at ¶ 5).

     **D.    Stewart was not Deprived of a Liberty Interest.**

     A statement that someone is terminated does not impugn an individuals reputation nor

is it defamatory, much less a statement that one is one is relieved of duty.  To establish a

liberty interest an individual must satisfy a four part test: 1) statements must impugn the

employee's reputation, 2) the statement must be false, 3) statement must occur in the course

of terminating or foreclose other employment opportunities and 4) statements must be published. Workman v. Jordan, 32 F.3d 475, (10th Cir. 1994); Nard v. City Of Oklahoma City, 153 F.App'x 529 (10th Cir. 2005). A defamatory statement must be incident to the termination Siegert v. Gilley, 111 S.Ct. 1789, 1794 (1991) That is, the termination must result from the defamatory statement not the statement resulting from the termination. Stidham v. Peace Officer Standards and Training, 265 F.3d 1144, 1154 (10th Cir. 2001)(employee not terminated incident to termination foreclosed Liberty Clause claim); Cooper v. Sedgwick County, Kansas, 206 F.Supp. 2d 1126, 1139-1140 (D.Kan., 2002) (defamatory statements not cause of termination fatal to Liberty Clause claim).

The case of Renaud v. Wyoming Dept. of Family Services, 203 F.3d 723, 727-728 (10th Cir. 2000) is similar to the case at bar. In *Renaud* a government employee, the superintendent of a state juvenile school was terminated as an at will employee. It had been reported that he was drunk at work and he had checked himself into a rehabilitation facility. The termination was done in private but after the termination the employer published information that he was dangerous and suicidal. The employee alleged this was defamatory and prevented his obtaining other employment opportunities. Citing *Siegert*, the court found that even if malicious defamation is not the basis of a constitutional claim. *Id.* at 727. While timing of the defamatory statement is a consideration, the facts relevant to the analysis are: the manner of the termination and whether the statement was incident to the termination. *Id.* at 727. More specifically, that the statement was not reason for the termination. *Id.* at 727-728. The court further noted though future employment opportunities may be foreclosed by

the defamatory statement every defamatory statement which impinge future employment does not infringe a liberty interest. *Id.* 726. Granting summary judgment the court found the post termination defamatory statement failed present a cognizable constitutional claim.

The statement at issue in this case, 'relieved of duty' does not impugn Stewart's reputation. Further, it was a true statement. (Ex. 1, pp. 41-42). Stewart was relieved of duty almost two months prior to termination thus, the termination was not contemporaneous with the statement. (Ex. 4, p. 91; Ex. 5, p.183 ¶5). Nor did the statement cause the termination. The 'relieved of duty' statements were made in the course of press inquiry as to the security of the public and the residents and the staff of the institutions over which Stewart and Moriarity had responsibility. (Ex. 5, p. 183 at ¶5 ). Further, as developed more fully in Section VI-Defamation, a response to a public inquiry about a public official is privileged. (Ex. 2 , pp.67-69). Also, as noted above, Stewart was not terminated, she resigned. (Ex. 4, p. 119). At any rate, neither the termination or resignation was published.

### E.   Stewart has Failed to Demonstrate an Equal Protection Claim.

The Fourteenth Amendment to the United States Constitution, § 1, the Equal Protection clause, provides no State shall deny any person within its jurisdiction of the equal protection of the laws. The elements of a claim under the Equal Protection clause are the same as Title VII and Defendants re-urge the authority and arguments in Sections I and II. Etsitty v. Utah Transit Authority, 502 F.3d 1215, 1227 (10th Cir. 2007). Additionally, Engquist v. Oregon Dept. of Agr., 128 S.Ct. 2146, 2157 (2008) involved a state employee's claim that she was laid off in violation of the Equal Protection clause. The court barred the

claim stating that ratifying a class of one theory of equal protection in the context of public employment, particularly when an employee has a variety of protections from personnel actions, would impermissibly constitutionalize the employee grievance. Defendants assert Plaintiff's equal protection claims is subject to dismissal.

In summary, the Due Process Clause is not a guarantee against incorrect or ill-advised personnel decisions. Bishop v. Wood, 96 S.Ct. 2074, 2080 (1976). In this case, Stewart does not have a property interest in her continued employment as the Director of Institutions at OJA. Nor has she been deprived of procedural or substantive due process or a constitutionally protected liberty interest. Finally, she has failed to demonstrate discrimination prohibited by the Equal Protection Clause.

### IV.   CHRISTIAN IS ENTITLED TO QUALIFIED IMMUNITY.

Though some elements of a Title VII claim parallel a §1983 and §1981 claim, a Plaintiff asserting claims of employment discrimination/retaliation against an individual under §1983 and §1981 must overcome an individual's qualified immunity showing the intentional violation by the individual of a clearly established constitutional right. Coleman v. Houston Independent School Dist., 113 F.3d 528, 533-534 (5th Cir. 1997). Qualified immunity may not be overcome by simply stating a particular right , i.e. the right to free speech was clearly established and any reasonable person would know not to violate it. Anderson v. Creighton, 107 S.Ct. 3034, 3038, 3041 (1987). Such a superficial pleading converts qualified immunity into an unqualified liability. *Anderson* at 3039. Plaintiff must, under the qualified immunity afforded an individual defendant, demonstrate the individual's

conduct was objectively unreasonable. Harlow v. Fitzgerald, 102 S.Ct. 2727, 2738 (1982);

Siegert v. Gilley, 111 S.Ct. 1789, 1793-1794 (1991). An officials actions are objectively

reasonable unless all reasonable officials in the defendant's circumstances would have

known the defendant's conduct violated the United States Constitution.   Anderson v.

Creighton, 107 S.Ct. 3034, 3038 and 3041 (1987).   When making a determination of

qualified immunity the decisive factor is not did the official error, but rather, could he have

believed his actions were legal. Malley v. Briggs, 106 S.Ct. 1092, 1096 (1986). The question

of reasonableness is not viewed from the 20/20 vision of hindsight but from the officials

perspective at the time and under the circumstances as they evolved.   Hunter v. Bryant, 112

S.Ct. 534, 536-537 (1991).  The purpose of immunity is to balance individual claims with the

social costs of expensive litigation and diversion of public official's energy from other public

issues.  Filarsky v. Delia, 132 S.Ct. 1657, 1665 (2012);   Harlow v. Fitzgerald, 102 S.Ct.

2727, 2736, 2738 (1982).

In the context of Christian's qualified immunity the question is: Is it objectively

reasonable for Christian, OJA Executive Director, under the circumstances of escalating

facility security incidents   coupled with increasing public scrutiny, to terminate those

responsible for the institutional operations?   First, it is without doubt that a problem existed

in the institutions. (Ex. 1, p. 20; Ex. 2, pp.67-69; Ex. 5, p. 182 at ¶ 2, p. 183 at ¶ 5).  The

Department of Justice was monitoring the institutions and even Stewart admits a problem in

the control of the institutions. (Ex. 1, pp. 6, 13-15; Ex. 2, pp. 67-69).  Second, assuredly, the

escalating incidents cannot continue unchecked. (Ex. 5, p. 182 at ¶ 2, p. 183 at ¶ 5).  Third,

even Stewart thinks some one should have been held accountable. She suggests Christian should be held responsible, however, the Board rejected Christian's offer to resign. (Ex. 1, p. 47; Ex. 2, p. 62; Ex. 3, p. 114). She suggests someone below her should be responsible but not Moriarity. (Ex. 1, p. 14). It was objectively reasonable for Christian to take aim at the management of the facility and the division, equating responsibility for the operations with responsibility for the problems. (Ex. 2, pp. 67-69; Ex. 5, p. 183 at ¶ 5). This is so, particularly when internal employee morale problems existed within the facilities. Internal problems which quickly became externalized when the incidents expanded to the public through not just a small riot but also an escape. Even if wrong in hindsight, the decision under the circumstances at the time let concerned parties, who Christian had to answer to, that OJA recognized a problem and it was not being ignored. (Ex. 5, p. 183 at ¶¶ 4-5). Christian's consideration in relieving Stewart of her duties and allowing her to resign on her time schedule, after running her leave beyond the agency limits, while placing another individual over the Institutions reasonably addressed the problem. And, Christian's acquiescence in good evaluations and authorization of raises for both individuals before the incidents illustrates his assignment of responsibility under all circumstances. Antonio v. Sygma Network, Inc., 458 F.3d 1177, 1183 (10th Cir. 2006)("same actor inference' raises strong inference employer's reason for action is not motivated by discriminatory animus).

In regard to the administrative assistants offensive story, the qualified immunity question is: Was Christian's action requiring an apology by the administrative assistant objectively reasonable? First, this was an isolated incident. Stewart had not made other

complaints of discrimination.  (Ex. 1, pp. 23-24, 27, ln. 8-14, p. 31, ln. 2-5).  Second, Christian responded when notified by Stewart. (Ex. 1, pp. 28, 31, 33).  Third, Christian required the assistant to apologize. (Ex. 1, p. 31), She apologized despite that others, such as Deanna Hartley-Kelso did not perceive the story as meant to be offensive or threatening. (Ex. 6, p. 186-191).  He also took into consideration the assistants personal situation. (Ex. 5, p. 183 at ¶ 6).  And, Stewart made no complaint to Christian that the apology was insufficient. (Ex. 1, p. 33).  Christian's conduct did not violate the constitution and was objectively reasonable, he is therefore entitled to qualified immunity.

## V.   STEWART'S NEGLIGENT SUPERVISION CLAIM IS SUBJECT TO DISMISSAL AS A MATTER OF LAW

Oklahoma recognizes liability against employers for negligence in hiring, supervising, or retaining an employee. N.H. v. Presbyterian Church (U.S.A.), 998 P.2d 592, 600 ( 1999). Oklahoma courts however, have yet to extend this liability among employees as opposed to third parties. Bowdish v. Federal Express Corp., 699 F.Supp.2d 1306, 1327 (W.D. Okla. 2010)(Okla. has yet to recognize claim outside of third party); Allen v. Justice Alma Wilson Seeworth Academy, Inc., 2012 WL 1298588 at p. 2 (W.D. Okla)(Oklahoma Anti-Discrimination Act may provide exclusive remedy); Polson v. Davis, 895 F.2d 705, 710 (10th Cir. 1990)(Ks. common law tort of negligent supervision by supervisor discriminating against employee rejected as attempt to circumvent employment at will doctrine).

In this case, Stewart sues OJA, her employer claiming negligence by her supervisor, Gene Christian, who was a co-employee of the same agency.  Oklahoma does not extend

liability to co-employees.   Assuming *arguendo*, such a claim is viable,  a critical  element

of a claim of negligent supervision is the employer's notice of an employee's propensity to

create a specific danger.  Schovanec v. Archdiocese of Oklahoma City, 188 P.3d 158, 167

(2008). That is, unlike *respondeat superior,* liability rests on  the employer's knowledge of

the employee's propensity to create a specific risk. *Schovanec* at 167-168. Stewart made no

complaints of discrimination against Christian until after her resignation.   Stewart fails to

state a claim against OJA upon which relief can be granted.

### VI.    STEWART'S DEFAMATION CLAIM IS SUBJECT TO DISMISSAL

OK ST T. 12 § 1441 and OK ST T. 12 § 1442 prohibit publication of false and

slanderous statements. The First Amendment however delimits such actions brought by

public officials against critics of their official conduct. New York Times Co. v. Sullivan, 84

S.Ct. 710, 727 (1964).   A public official or figure, is an individual holding responsibility

over government affairs or a position where the public has an interest in performance.

Rosenblatt v. Baer, 86 S.Ct. 669, 676 (1966); Johnston v. Corinthian Television Corp., 583

P.2d 1101, 1103 (1978)(grade school wrestling coach public official); Gray v. Udevitz, 656

F.2d 588, 591 (1981)(police officer considered public official); Revell v. Hoffman, 309 F.3d

1228, 1232-1233 (10th Cir.  2002)(high ranking FBI employee involved in policy a public

official); Torix v. Brown, 295 P.3d 1138, 1141 (Okla. Civ. App. Div.3 2012)(police officer

considered public official).  The public official rule protects the paramount public interest

in free flow of information to people concerning public officials. Jurkowski v. Crawley, 637

P.2d 56, 59 (1981)(anything that might touch on officials fitness for office relevant to public

official rule).  Statements concerning public official must be with actual malice, that is, with

knowledge it was false or with reckless disregard whether it was false or true.  *Rosenblatt* at

675; Herbert v. Oklahoma Christian Coalition, 992 P.2d 322, 328 (1999)(malice in public

official rule requires clear and convincing evidence).

   The statement at issue in this case was in response to a news inquiry about the

employees responsible for state juvenile institutions.  (Ex. 2, p. 102; Ex. 5, p. 183 at ¶¶ 4-5).

The statement concerned a public official' responsibility for a public event-the escape, was

about a public institution-COJC, and was of interest to the public. (Ex. 5, p. 182 at ¶ 2, p.

183 at ¶ 4; Ex. 4, pp. 164-179).  The statement was true and without malice. (Ex. 1 p. 41-42,

37; Ex. 5 p.  183 ¶ 4-5)  The statement was not defamatory and if so it was privileged as

information regarding a public official and the officials duties.

   Additionally, OK ST T. 12 § 95(A)(4) provides a one year statute of limitations for

defamation claims.   In this case, the statements regarding Stewart were made shortly

following the October 3, 2011 escape, when she was relieved of duty.  Stewart did not file

suit until November 26, 2012, more than a year later. [Doc. 1]. Stewart's defamation claim

is barred by the one year statute of limitations.

## VII.    STEWART'S BLACKLISTING CLAIM IS SUBJECT TO DISMISSAL

   Blacklisting is an agreement among employers not to hire a particular employee with

the intent of preventing employment.   95 A.L.R.5th 1.  Oklahoma law prohibits a firm,

corporation or individual from blacklisting an employee with the intent and purpose to

prevent employment. OK ST T. 40 §172.  Blacklisting is a list of persons marked for special

enmity by those who prepare the list or are recipients of the list. <u>Nichols v. Pray, Walker, Jackman, Williamson & Marler, a Professional Corp.</u>, 144 P.3d 907, 911 (Okla. Civ. App. Div. 3, 2006) citing *State v. Dabney,* 141 P.2d 303 (1943).

First, the comment in this case, "relieved of duty" was not part of any agreement to prevent her employment. Stewart admits no such agreement exists and that neither Christian or the agency gave her a poor reference or even spoke to anyone about her termination from the agency. (Ex. 1, pp. 40-41, 43, ln. 6-12 - p. 44; Ex. 5, p. 183 at ¶ 5). Second, the comment was made in response to an press inquiry in a matter of public concern regarding the safety of the state juvenile institutions not as intentional means of preventing employment with another employer.  (Ex. 2, pp.67-69; Ex. 5, p. 183 at ¶ 5; Ex. 4, p. 119).  Finally, the statement was a comment on Stewart's status and position as an employee not an evaluation of her work performance. <u>OK ST T. 51 § 24A.7</u> (B)(3).  The statement fails to state a claim of blacklisting under the Oklahoma statute.

## VIII.   STEWART HAS FAILED TO DEMONSTRATE AN INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

An action for intentional infliction of emotional distress will lie only where there is extreme and outrageous conduct, beyond all bounds of decency, atrocious and utterly intolerable in civilized society,   coupled with severe emotional distress. <u>Durham v. McDonald's Restaurants of Oklahoma, Inc.</u>, 256 P.3d 64, 67 (2011); <u>Brock v. Thompson</u>, 948 P.2d 279 (1997).  Cannot bring against individual under GTCA. <u>Simington v. Parker</u>, 250 P.3d 351 (Okla. Civ. App. Div. 1, 2011).  Further, the same privileges applicable to

defamation claims  privilege also applicable  to intentional infliction of emotional distress claim. Peterson v. Grisham, 594 F.3d 723, 729-730 (10th Cir. 2010).  Being relieved of duty and terminated is not extreme outrageous conduct beyond all bounds of decency intolerable in a civilized society.

### IX.    OJA AND CHRISTIAN ARE ENTITLED TO ELEVENTH AMENDMENT/SOVEREIGN IMMUNITY

The Supreme Court has held that an unconsenting state is immune from suit brought in federal court by its own citizens as well as by citizens of another state. U.S.C.A. CONST Amend. XI;  Alden v. Maine, 119 S.Ct. 2240, 2246 (1999); Will v. Michigan Dept. of State Police, 109 S.Ct. 2304, 2312 (1989)(Eleventh Amendment immunity bars § 1983 claims against states and individuals sued in official capacity);  Ellis v. University of Kansas Medical Center, 163 F.3d 1186, 1196 (10th Cir. 1998) (Congress did not abrogate Eleventh Amendment immunity through §1981 or § 1983).  Moreover, Oklahoma has explicitly preserved its Eleventh Amendment and sovereign immunity. OK ST T. 51 § 152.1;  Elwell v. Oklahoma ex rel. Bd. of Regents of University of Oklahoma, 693 F.3d 1303, 1315 (10th Cir.  2012).

In this case, Stewart sues Christian under § 1981 and § 1983 partly in his official capacity.  Christian asserts those claims are barred by his Eleventh Amendment immunity.

**CONCLUSION**

In conclusion, in the absence of evidence of impermissible motives, business decisions are not subject to second guessing and evidence suggesting in hindsight the decision was not prudent is not evidence of improper motive.  Furr v. Seagate Technology, Inc., 82 F.3d 980, 966 (10th Cir.  1996).  In the instant case, Plaintiff has failed to establish a case of discrimination or retaliation or overcome Defendant's qualified immunity.  Nor has Plaintiff established her state law claims.   Defendants assert judgment in their behalf on all claims is appropriate.

Respectfully submitted,

s/Susan Werner
**SUSAN WERNER, OBA #9482**
ASSISTANT ATTORNEY GENERAL
Office of Attorney General
Litigation Section
313 N.E. 21st Street
Oklahoma City, Oklahoma  73105
Tele: (405) 522-2930  Fax: (405) 521-4518
Susan.Werner@oag.ok.gov
*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

This is to certify that on this 1st day of November, 2013, I electronically transmitted this document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Jana B. Leonard
Leonard & Associates, P.L.L.C.
8265 S. Walker
Oklahoma City, OK 73139

s/ Susan Werner
SUSAN WERNER