IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ELIZABETH STEWART,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF OKLAHOMA ex rel. OKLAHOMA OFFICE OF JUVENILE AFFAIRS, and GENE CHRISTIAN, Individually as former Executive Director of the Oklahoma Office of Juvenile Affairs,<br><br>Defendants. | ) | No. CIV-12-1297-C |

**<u>MEMORANDUM OPINION & ORDER</u>**

Following three incidents of violence at one of the juvenile facilities overseen by Plaintiff Elizabeth Stewart, Defendant Gene Christian, then serving as the Executive Director of the Oklahoma Office of Juvenile Affairs ("OJA"), asked Plaintiff to resign or face termination. Plaintiff subsequently brought this suit against Christian and the OJA, alleging unlawful gender and racial discrimination, retaliation, and violation of the Equal Protection and Due Process clauses of the Fourteenth Amendment of the United States Constitution. Defendants now move this Court for summary judgment on all of Plaintiff's claims. For reasons more fully set forth herein, the Court now GRANTS Defendants' Motion for Summary Judgment (Dkt. No. 29).

## <u>I. BACKGROUND</u>

Plaintiff Elizabeth Stewart is an African-American female who worked as the Division Administrator for the Institutional Services Division of the OJA until her supervisor,

Defendant Christian, a Caucasian male, asked for her resignation in October 2011. Prior to Defendant Christian's resignation request, Plaintiff had received only positive work evaluations from her direct supervisor, Gary Bolin, which Defendant Christian signed off on. Defendants allege that Defendant Christian asked Plaintiff for her resignation because of three violent incidents that took place at the COJC residential juvenile facility, one of the two[1] juvenile facilities under her oversight, within a short time frame. According to Defendants, Defendant Christian's request for Plaintiff's resignation was non-discriminatory, as Defendant Christian also asked Mike Moriarty, the superintendent of the specific facility where the incidents occurred and Plaintiff's subordinate, to retire as a result of the incidents. Mike Moriarty is a Caucasian male. Plaintiff disagrees, arguing Defendant Christian previously engaged in discriminatory behavior, both against herself and another female employee, and that the incidents were merely pretext for her termination. Plaintiff points out that despite violent incidents at other facilities, both before and after Plaintiff's termination, other employees were not terminated or asked to resign.

II. LEGAL STANDARD

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it affects the disposition of the substantive claim.

---

[1] There were three facilities when Plaintiff first began working at OJA as head of OJA's institutional services division—Rader, COJC, and SWOJC. Shortly before the violent incidents Defendants allege led to Plaintiff's resignation, OJA closed the Rader facility

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation omitted). If the movant satisfactorily demonstrates an absence of genuine issue of material fact with respect to a dispositive issue for which the non-moving party will bear the burden of proof at trial, the non-movant must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. A court considering a summary judgment motion must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000).

## III. ANALYSIS

### A. Title VII Claims

First, Plaintiff claims Defendant OJA is liable for discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII").[2] Title VII makes it unlawful "for an employer . . . to discharge any individual,

---

[2] In their Motion for Summary Judgment, Defendants also address a purported hostile work environment claim. (Defs.' Mot., Dkt. No. 29, at 14-16.) In Response, however, Plaintiff contends "no such claim has been asserted." (Pl.'s Resp., Dkt. No. 40, at 20 n. 6.) Plaintiff's Petition does not allege discrimination on the basis of a hostile work environment.

or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, . . . [or] sex." Id. § 2000e-2(a)(1). Before bringing suit, an employee must comply with Title VII's administrative procedural prerequisites, which include filing a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Montes v. Vail Clinic, Inc., 497 F.3d 1160, 1163 (10th Cir. 2007) (citing 42 U.S.C. § 2000e-5(e)(1)). Following administrative exhaustion, courts analyze both discrimination and retaliation claims under the McDonnell Douglas[3] burden-shifting framework. Crowe v. ADT Sec. Servs., Inc., 649 F.3d 1189, 1195 (10th Cir. 2011) (noting McDonnell Douglas framework applies to both discrimination and retaliation claims).

1. Discrimination

The McDonnell Douglas burden-shifting framework applies when a plaintiff relies on circumstantial evidence to support charges of discrimination. Daniels v. United Parcel Serv., Inc., 701 F.3d 620, 627 (10th Cir. 2012). Under McDonnell Douglas, Plaintiff has the initial burden of establishing a prima facie case of gender- or race-based discrimination. Id.; Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000). Plaintiff must demonstrate "(1) [s]he belongs to a protected class; (2) [she] was qualified for [her] job; (3) despite [her] qualifications, [she] was discharged; and (4) the job was not eliminated after [her] discharge." Nguyen v. Gambro BCT, Inc., 242 F. App'x 483, 488 (10th Cir. 2007)

---

[3] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

(quoting Kendrick, 220 F.3d at 1229).[4] If Plaintiff meets her burden, Defendant OJA must then articulate "a legitimate nondiscriminatory reason for its actions." Daniels, 701 F.3d at 627. If Defendant OJA does so, Plaintiff must "introduce evidence that the stated nondiscriminatory reason is merely a pretext for discriminatory intent." Id.

With respect to Plaintiff's prima facie case, Defendant OJA does not challenge Plaintiff's membership in a protected class, that she was qualified for her job, or that it did not eliminate Plaintiff's position after her departure. Instead, Defendant OJA argues that Plaintiff cannot meet her initial burden under McDonnell Douglas because it did not actually terminate Plaintiff; instead, Defendant asserts that Plaintiff voluntarily resigned. Plaintiff disagrees, contending that forcing her to choose between termination and resignation made her resignation the equivalent of a discharge. Constructive discharge occurs when an employee has "no other choice but to quit." Potts v. Davis Cnty., 551 F.3d 1188, 1194 (10th Cir. 2009) (internal citation omitted). In deciding whether a resignation was voluntary or coerced, the Court examines "the totality of the circumstances." Id. Here, Plaintiff's only alternative to resigning was termination. Although Defendant OJA gave Plaintiff time to

---

[4] The Kendrick court acknowledged that the "court has, on occasion, recited a more general [three-prong] test for determining if a plaintiff has established a prima facie case of discriminatory discharge." 220 F.3d at 1227 n.6. However, the Court concluded that although "[c]ollapsing the four-part prima facie case of McDonnell Douglas into a three-part test may occasionally be helpful when addressing discrimination claims that either do not fall into any of the traditional categories (e.g., hiring or discharge) or present unusual circumstances," ordinarily, "more structure and guidance can be found in the traditional four prongs of the McDonnell Douglas prima facie test." Id. Because this case presents one of the "traditional categories"—discharge—this Court uses the four-prong test from Kendrick, rather than the shortened three-part version found in Daniels.

consider her decision and spared her the embarrassment of a termination, it is unclear whether Plaintiff's resignation could be considered "voluntary." However, because the Court can resolve Plaintiff's claims at a later stage of the McDonnell Douglas test, the Court will assume without deciding that Plaintiff's resignation amounted to a discharge under these circumstances.

Assuming without deciding Plaintiff established her prima facie case, the burden then shifts to Defendant OJA to articulate a legitimate, non-discriminatory reason for Plaintiff's discharge. Defendant has done so. In its brief, Defendant OJA states that Defendant Christian decided to relieve Plaintiff of duty in response to three security incidents occurring at the COJC facility over a two-month time period, including a juvenile-on-juvenile assault, a gang-related incident in the gym which resulted in the police being called, and an escape of three juveniles. Defendants contend that these incidents complicated Defendant OJA's efforts to conclude a federal consent decree resulting from the operations of a different facility and resulted in negative attention from the press and the public. At the same time, Defendant Christian also relieved the COJC superintendent, Mike Moriarty, a Caucasian male, of his duties for the same reasons. Because Defendant OJA offered a non-discriminatory explanation for Plaintiff's discharge, the burden shifts back to Plaintiff to prove that the proffered reason was merely pretext for discrimination.

To create a genuine issue of material fact with respect to pretext, Plaintiff must offer "evidence showing weakness, implausibility, inconsistency, incoherency, or contradiction in [Defendant OJA's] stated reasons, such that a reasonable jury could find them

unconvincing." Daniels, 701 F.3d at 639. No one type of evidence is required to discredit the employer's proffered legitimate reason and establish a discriminatory inference. Trujillo v. PacifiCorp, 524 F.3d 1149, 1158 (10th Cir. 2008). Plaintiff can demonstrate pretext "in a variety of ways, including but not limited to differential treatment of similarly situated employees and procedural irregularities." Id.

First, Plaintiff argues that Defendants treated her differently than similarly situated employees in relieving her of her duties after the three violent events at COJC because neither of her supervisors, both Caucasian males, had to resign. Plaintiff has not presented any evidence, however, that Bolin and Defendant Christian were "similarly situated employees." As director of the entire OJA, Defendant Christian served in a much different role than Plaintiff, who oversaw OJA's two juvenile facilities. Neither is Bolin similarly situated, given his position as OJA Chief of Staff. The employee situated most similarly to Plaintiff in this case was Mike Moriarty, whom Defendant Christian also asked to resign. Plaintiff also alleges Defendants treated her differently than the former superintendents of the now-closed Rader facility, who were not relieved of their duties despite "the significant issues surrounding Rader" and "its constant bad press." (Pl.'s Resp., Dkt. No. 40, at 25.) Although those employees appear to have also overseen a facility with problems and bad press, Plaintiff has not alleged that Defendants failed to discipline those employees under similar circumstances to Plaintiff and Moriarty: three violent incidents—including an assault resulting in a brain injury, a small riot, and an escape—within a two-month time-frame, which allegedly complicated Defendant OJA's efforts to conclude a federal consent decree.

Accordingly, Plaintiff has not created a genuine issue of material fact with respect to "differential treatment for similarly situated employees." Trujillo, 524 F.3d at 1158.

Relatedly, Plaintiff argues that it would have been more appropriate to terminate Defendant Christian, rather than her or Moriarty. Plaintiff admits there was a problem with the three violent incidents at COJC but argues she was not responsible because she did not directly control the day-to-day operations or security at COJC. However, Plaintiff also argues that Moriarty, who did handle COJC's daily operations and security, should not have been fired either. Instead, Plaintiff contends that it was Defendant Christian's decision to close the Rader facility that created a more violence-prone environment at COJC. But whether or not it was fair to discharge Plaintiff and Moriarty, rather than Defendant Christian, is immaterial because "[t]he relevant inquiry is not whether [the defendant employer's] proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." Estate of Daramola v. Coastal Mart, Inc., 170 F. App'x 536, 541-42 (10th Cir. 2006) (citing Rivera v. City & Cnty. of Denver, 365 F.3d 912, 924 (10th Cir 2004)). Defendant Christian has stated that he made the decision to relieve Plaintiff and Moriarty of their duties after COJC received significant bad press from the three violent incidents and he felt that immediate changes had to be made. In her deposition, Plaintiff conceded that at the time Defendant Christian relieved her of her duties, she believed it was for that same reason, or that "he was receiving press from what had occurred at [COJC] and . . . [her discharge was] a way for him to take care of it and show

that he was doing something" to address the problems at COJC. (Defs.' Mot., Dkt. No. 29-4, at 58.)

Finally, Plaintiff argues that Defendant Christian's prior discriminatory behavior toward African-Americans and females supports a finding that his stated legitimate reason is "'unworthy of credence'" or belief. Luster v. Vilsack, 667 F.3d 1089, 1092 (10th Cir. 2011) (citation omitted). Plaintiff testified that during her time at OJA, she could not recall any sexual jokes, comments, or slurs from the staff at OJA but did remember one racially-offensive story[5] told by Defendant Christian's assistant, Linda McLennan, at a board retreat approximately a year before Defendant Christian relieved Plaintiff of her duties. Defendant Christian was not present when McLennan told the offensive story. After Plaintiff emailed Defendant Christian about the incident, Defendant Christian ordered McLennan to write an apology, which she delivered to Plaintiff. Contrary to Plaintiff's claims, Defendant Christian's actions do not show a "lack of responsiveness" that "supports the fact that Christian placed no significance on racism." (Pl.'s Resp., Dkt. No. 40, at 26.) Moreover, an offensive story by McLennan is not an indication that Defendant Christian acted with a racially discriminatory motive in relieving Plaintiff of her duties, particularly given Defendant Christian's immediate response to Plaintiff's complaint. Plaintiff likewise has failed to produce evidence that Defendant Christian ever acted in a discriminatory fashion

[5] At the board retreat, McLennan told Plaintiff that when she was a teenager, she and some friends dressed up as the Ku Klux Klan for Halloween, including having one person paint his face black and wear a noose around his neck.

to Plaintiff because of Plaintiff's gender. The only evidence of gender discrimination presented by Plaintiff is one inappropriate remark made by Defendant Christian to another female employee,[6] for which he later apologized, and that employee's equal pay claim, which has been resolved. Plaintiff's evidence is insufficient to create a genuine issue of material fact with respect to whether Defendant Christian's proffered legitimate reason for her discharge was merely pretext, hiding a discriminatory race- or gender-based animus. Accordingly, summary judgment is appropriate for Defendant OJA on Plaintiff's Title VII discrimination claim.

2. Retaliation

Plaintiff has also asserted a Title VII retaliation claim against Defendant OJA. Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against an employee who has opposed harassment or discrimination in the workplace. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under McDonnell Douglas, Plaintiff must show: "(1) 'she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action.'" Daniels, 701 F.3d at 638 (quoting Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1202 (10th Cir. 2008)). Plaintiff "engaged in protected opposition to discrimination" when she complained to Defendant Christian about his assistant's offensive

[6] Defendant Christian admittedly told a female employee that OJA might get more funding if she would sleep with a state legislator.

Halloween story and suffered a "materially adverse" employment action when Defendant Christian relieved her of her duties. Defendant OJA contests, however, that a causal connection exists between the two events.

To demonstrate the requisite causal connection, Plaintiff must produce "'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action,'" or temporal proximity. Conroy v. Vilsack, 707 F.3d 1163, 1181 (10th Cir. 2013) (citations omitted). Here, it is clear that Plaintiff cannot rely on temporal proximity to infer a retaliatory motive in her discharge, as her complaint about the offensive Halloween story occurred nearly a year before her discharge. Id. (recognizing no temporal inference of causation when adverse action occurs at least three months after the protected activity). Plaintiff can, however, offer "'additional evidence to establish causation'" in order to prove her prima facie case. Id. But Plaintiff has failed to do so in this case. Plaintiff's only additional evidence of retaliation is her unsubstantiated allegation that Defendant Christian excluded her from certain meetings about the youth from the Rader facility. This is insufficient to support an inference of a retaliatory motive for an incident involving a complaint about another employee over a year before Defendant Christian relieved Plaintiff of her duties.[7] Summary judgment for Defendant OJA is appropriate on Plaintiff's Title VII retaliation claim.

---

[7] Moreover, in her EEOC charge, Plaintiff did not assert that her discharge was the result of retaliation. Accordingly, Plaintiff did not exhaust her administrative remedies with respect to Title VII retaliation.

B. § 1981 Claims

Plaintiff has also alleged a cause of action for race discrimination and retaliation against Defendant Christian pursuant to 42 U.S.C. § 1981. However, courts use the same McDonnell Douglas burden-shifting framework to analyze § 1981 claims as Title VII claims. Crowe, 649 F.3d 1189, 1194. Accordingly, because the Court already rejected Plaintiff's Title VII discrimination and retaliation arguments, summary judgment for Defendant Christian is appropriate on both of Plaintiff's § 1981 claims as well.

C. Constitutional Claims

3. Equal Protection

Under the Fourteenth Amendment to the United States Constitution, a state actor cannot "deny to any person . . . the equal protection of the laws." Count IV of Plaintiff's Complaint alleges that Defendant Christian "deprived Plaintiff of her constitutional right to equal protection" while "acting under the color of his authority." (Pl.'s Am. Compl., Dkt. No. 9, at 8.) Plaintiff's claim is brought pursuant to 42 U.S.C. § 1983. The elements of a discrimination lawsuit are the same whether brought pursuant to § 1983 or Title VII. See Drake v. City of Fort Collins, 927 F.2d 1156, 1162 (10th Cir. 1991). Because the Court has already concluded that Plaintiff cannot demonstrate that a genuine issue of material fact exists at the third step of the McDonnell Douglas test, summary judgment for Defendant Christian is appropriate on this claim.

2. Procedural Due Process

The Fourteenth Amendment also requires a state to prove "due process of law" before depriving "any person of life, liberty, or property." In order for Plaintiff "to invoke [the Fourteenth Amendment's] procedural protection," Plaintiff first "must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Plaintiff argues that Defendant Christian infringed both her property interest in continued employment and her liberty interest in her reputation when he relieved her of her duties and forced her to resign.

An employee has a constitutionally-protected property interest if there exists "'a legitimate claim of entitlement'" to continued employment, rather than just "'a unilateral expectation.'" Ribeau v. Katt, 681 F.3d 1190, 1194 (10th Cir. 2012) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 576 (1972)); see also Gonzales v. City of Albuquerque, 701 F.3d 1267, 1271 (10th Cir. 2012) ("A property interest in the employment context consists of a 'legitimate expectation in continued employment.'") (quoting Lighton v. Univ. of Utah, 209 F.3d 1213, 1221 (10th Cir. 2000)). State law governs whether a property interest exists. Gonzales, 701 F.3d at 1271. Oklahoma law provides that an employee holding an unclassified position in the Oklahoma state government does not have a right or expectation of continued employment. 74 Okla. Stat. § 840-5.1A(A). Plaintiff testified that she was "an unclassified staff" member and an "at will employee." (Defs.' Mot., Dkt. Nos. 29-3 at 39-40; 29-4 at 60.) Additionally, Plaintiff's job offer expressly informed her that the position of Division Administrator with the OJA was "an unclassified position" and [t]he condition of

[her] employment [would be] 'at-will.'" (Defs.' Mot., Dkt. No. 29-7 at 137.)[8] Accordingly, Plaintiff did not have a constitutionally-protected property interest in continued employment.

Plaintiff also asserts that Defendant Christian's actions violated her constitutionally-protected liberty interest. A public employee "has a liberty interest in [her] good name and reputation as it related to [her] employment." Darr v. Town of Telluride, Colo., 495 F.3d 1243, 1255 (10th Cir. 2007). To state a cause of action for an infringement of a liberty interest, Plaintiff must meet a four-part test:

> first, the statements must impugn the employee's good name, reputation, honor, or integrity; second, the statements must be false; third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities; and fourth, the statements must be published.

Id. (citing Workman v. Jordan, 32 F.3d 475, 481 (10th Cir. 1994)). Plaintiff contends Defendants "published false comments that impugned [Plaintiff's] good name after she was placed on leave" by informing the press "that Stewart had 'taken annual leave so that legal issues can be addressed'" and that "she was relieved of [her] duties." (Pl.'s Resp., Dkt. No. 40, at 31.) However, Plaintiff has conceded that she could not recall Defendant ever making a direct statement to the media that was false, as she had in fact been relieved of her duties at the time Defendant Christian issued that statement. (Defs.' Mot., Dkt. No. 29-4, at 65-66,

---

[8] Plaintiff argues that because 74 Okla. Stat. § 840-5.5 does not specifically denote her position as "unclassified," Defendant "Christian misclassified her." (Pl.'s Resp., Dkt. No. 40, at 30.) However, Plaintiff's job offer from 2004 informed her that her position would be unclassified, well before Defendant Christian took the position of Executive Director in the fall of 2006. Furthermore, 74 Okla. Stat. § 840-5.15 specifically allows the OJA to put an additional forty-one employees in unclassified service, in addition to those unclassified pursuant to § 840-5.5.

70.) Although Plaintiff feels that announcing she had been relieved of her duties "implied that [she] was the sole one responsible for the actions that occurred in [COJC]," she admits Defendant Christian never actually made that statement. (Id., Dkt. No. 29-4 at 69-70 (emphasis added).) Accordingly, Plaintiff has not made out a case for deprivation of her constitutional liberty interest. Because Plaintiff did not have a property interest in continued employment and has shown no liberty interest infringement, summary judgment on Plaintiff's procedural due process claim is appropriate for Defendant Christian.

2. Substantive Due Process

Plaintiff also alleges that Defendant Christian violated her substantive due process rights. The Tenth Circuit has "not decided whether an employee with a property right in state-created employment is protected by the substantive due process clause," in addition to the procedural due process clause. Potts v. Davis Cnty., 551 F.3d 1188, 1193 n.1 (10th Cir. 2009). However, even if the substantive due process clause offers protection in some circumstances, it does not do so here. First, the Court has already determined that Plaintiff does not have a property right in continued employment with the state. Moreover, Defendant Christian's actions did not rise to the necessary standard to invoke the substantive due process clause, as they were "'not arbitrary or without a rational basis.'" Id. (citation omitted). Defendant Christian has offered a rational explanation for Plaintiff's discharge: the three violent incidents occurring at COJC within a short time frame. Plaintiff has not

responded to Defendants' argument.[9] Summary judgment for Defendant Christian is appropriate on this claim.

C. State Law Claims

1. Negligent Supervision

Plaintiff's sixth cause of action is a claim for negligent supervision, training, or retention against Defendant OJA, which alleges Defendant OJA breached its "duty to properly supervise and train its employees to refrain from engaging in unlawful retaliation." (Amend. Compl., Dkt. No. 9, at 10.) Oklahoma permits employers to be liable to a third party "for negligence in hiring, supervising or retaining an employee" if an employee harms a third party and the employer "had reason to believe that the [employee] would create an undue risk of harm to others." N.H. v. Presbyterian Church (U.S.A.), 1999 OK 88, ¶ 20, 998 P.2d 592, 600. But, as Defendants point out, "[i]t is unclear whether the Oklahoma Supreme Court would recognize this type of claim in the context of harm to a co-employee rather than a third party." Bowdish v. Fed. Express Corp., 699 F. Supp. 2d 1306, 1327 (W.D. Okla. 2010); see also Polson v. Davis, 895 F.2d 705, 710 (10th Cir. 1990) (rejecting attempt of employee to circumvent at-will doctrine through Kansas common law tort of negligent supervision).[10] Even if Oklahoma were to permit Plaintiff's claim, however, summary

---

[9] Plaintiff labels one section of her brief "Substantive Due Process (Liberty Interest)" but that portion only sets forth Plaintiff's liberty interest argument, which actually falls under the procedural due process clause. It does not discuss substantive due process or the "arbitrary or without a rational basis" standard.

[10] Plaintiff contends that "Defendants cite no authority showing [a] claim [for negligent hiring, supervision, or retention by a co-employee] is not recognized in Oklahoma." (Pl.'s Resp.,

judgment would be appropriate for Defendant OJA because Plaintiff has not shown that Defendant Christian retaliated against her, the purported harm set forth in Plaintiff's Amended Complaint as the basis for this tort.

2. Intentional Infliction of Emotional Distress

Plaintiff also alleges that both Defendant Christian and Defendant OJA are liable for the tort of intentional infliction of emotional distress because of their "extreme and outrageous" conduct. The tort of intentional infliction of emotional distress requires Plaintiff to prove: "1) the alleged tortfeasor acted intentionally or recklessly; 2) the alleged tortfeasor's conduct was extreme and outrageous; 3) the conduct caused the plaintiff emotional distress; and 4) the emotional distress was severe." Durham v. McDonald's Rests. of Okla., Inc., 2011 OK 45, ¶ 4, 256 P.3d 64, 66. Conduct is only "extreme and outrageous" when it "is so extreme in degree as to go beyond all possible bounds of decency, and is atrocious and utterly intolerable in a civilized community." Id. ¶ 9, 256 P.3d at 67. Plaintiff has not responded to Defendants' contention that "[b]eing relieved of duty and terminated is not extreme outrageous conduct beyond all bounds of decency intolerable in a civilized society." (Defs.' Mot. at 29.) The Court agrees that no "extreme and outrageous" conduct occurred in this case. Furthermore, Plaintiff has not established that her emotional distress was "severe." The tort of "[i]ntentional infliction of emotional distress does not provide redress for every invasion of emotional serenity or ever anti-social act that may produce hurt

Dkt. No. 40, at 32 n.12.) This ignores the authority cited in Defendants' brief, such as Bowdish.

feelings." Durham, 2011 OK 45, ¶ 13, 256 P.3d at 68. Even when a plaintiff has "highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea," those feelings "must be so severe that no reasonable person could be expected to endure it." Id. Plaintiff has not provided any support for her allegation that she "did in fact suffer severe emotional distress." (Amend. Compl., Dkt. No. 9, at 10.) Summary judgment is appropriate for both Defendants on this claim.

3. Defamation

To prove defamation, Plaintiff must establish that Defendants: (1) made a false statement about Plaintiff; (2) that was not privileged; (3) that was published; and (4) that "[t]ends directly to injure [Plaintiff] in respect to [her] office, profession, trade or business." 12 Okla. Stat. § 1442. The parties agree that Defendants published a statement about Plaintiff when Defendant Christian relieved Plaintiff of her duties. But Plaintiff admitted that Defendant Christian's statement was not false, as she had in fact been relieved of her duties. Summary judgment is thus appropriate for both Defendants on Plaintiff's defamation claim.[11]

4. Blacklisting

Finally, Plaintiff asserts that both Defendants are liable for blacklisting her in violation of 40 Okla. Stat. § 172. Oklahoma defines "blacklist" as: circulation of "a list of

[11] Defendants also argue that their statements were privileged because Plaintiff was a public official or figure, since she held a position in which the public had an interest in performance. The Court does not need to address this argument as Plaintiff has not proved that Defendants' statements were false.

individuals regarded as suspect or as deserving of censure or adverse discrimination." Nichols v. Pray, Walker, Jackman, Williamson & Marler, a Prof'l Corp., 2006 OK CIV APP 115, ¶ 1, 144 P.3d 907, 911-12 (quoting State v. Dabney, 1943 OK CR 98, 141 P.2d 303, 307). Plaintiff has not alleged that Defendants took an affirmative action with the intent of censuring Plaintiff. Defendant Christian's statement to the press that he had relieved Plaintiff of her duties does not compare with the evidence of blacklisting found in Dabney, or writing a letter to a former employee's new employer, describing the employee as a troublemaker. See Dabney, 1943 OK CR 98, 141 P.2d at 305-06. Summary judgment for both Defendants is appropriate on Plaintiff's blacklisting claim.

## IV. CONCLUSION

Accordingly, the Court now GRANTS Defendants' Motion for Summary Judgment (Dkt. No. 29) and a Judgment shall enter. Plaintiff's Motion to Compel (Dkt. No. 28) is thus MOOT.

IT IS SO ORDERED this 18th day of December, 2013.

ROBIN J. CAUTHRON
United States District Judge